Gala v City of New York (2024 NY Slip Op 51100(U))

[*1]

Gala v City of New York

2024 NY Slip Op 51100(U)

Decided on August 21, 2024

Supreme Court, Kings County

Frias-Colón, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 21, 2024
Supreme Court, Kings County

Michael Gala, James Booth, Joseph Jardin, Frank Leeb, 
 Michael Massucci, Carla Murphy, and Fred Schaaf, Plaintiffs,

against
The City of New York, Philip Banks III, as Deputy Mayor for Public Safety and in his Individual Capacity, Laura Kavanagh, as Commissioner of the New York City Fire Department and in her Individual Capacity, Joseph Pfeifer, as First Deputy Commissioner and in his Individual Capacity, Luis Martinez, as Chief of Staff and in his Individual Capacity, and JonPaul Augier, as Deputy Commissioner of FDNY Infrastructure & Innovation and in his Individual Capacity, Defendants.

Index No. 509034/2023

For Plaintiffs:
James Walden of Walden Macht & Haran, LLP, 1 Battery Park Plaza 34th Fl., NY, NY 10004, 212-335-2031 
For Defendants:
Hayley Nicole Bronner of New York City Law Dept., 100 Church Street, NY, NY 10007, 212-356-2460

Patria Frias-Colón, J.

Recitation as per CPLR §§ 2219(a) and/or 3211(a) of papers considered on review of this motion:
NYSCEF Doc Nos. 52-60; 66 by Defendants
NYSCEF Doc No. 64 by Plaintiffs
Upon the foregoing cited papers and oral argument heard on June 5, 2024, Defendants City of New York ("City"); Philip Banks III, as Deputy Mayor for Public Safety and in his individual capacity ("Banks"); Laura Kavanagh, as Commissioner of the New York City Fire Department ("FDNY") and in her individual capacity ("Kavanagh");[FN1]
Joseph Pfeifer, as First [*2]Deputy Commissioner and in his individual capacity ("Pfeifer"); Luis Martinez, as Chief of Staff and in his individual capacity ("Martinez"); and JonPaul Augier, as Deputy Commissioner of FDNY Infrastructure & Innovation and in his individual capacity ("Augier"; collectively with the City, Banks, Kavanagh, Pfeifer, and Martinez, "Defendants"), jointly move, pre-answer, for an Order, pursuant to CPLR §§ 3211(a)(5) and (a)(7),[FN2]
dismissing with prejudice the Third Amended Complaint, dated January 25, 2024, on the grounds that: (1) the claims of Plaintiffs Michael Gala, James Booth, Joseph Jardin, Frank Leeb, Michael Massucci, Carla Murphy, and Fred Schaaf (collectively, "Plaintiffs") are partially time-barred, partially barred by waiver and release, and, in their totality, fail to state a cause of action; and (2) claims against Banks and Pfeifer should be dismissed for lack of their personal involvement, together with such other and further relief as this Court deems just and proper. As explained below, the Motion is GRANTED in part and DENIED in part.
Background
Nigro Action
On November 13, 2020, Plaintiff Michael Gala ("Gala"), then a Deputy Assistant Chief of the FDNY, brought a retaliation action under 42 USC § 1983 against the City and then-FDNY Commissioner Daniel Nigro ("Commissioner Nigro"). See Gala v City of New York, Case No. 20-cv-5549 (E.D.NY) (the "Nigro Action") in the United States District Court for the District of New York (the "District Court"). Therein, Gala alleged that his planned promotion to Assistant Chief in May 2020 was rescinded by then Commissioner Nigro because Gala refused to recant the views which he had expressed in the "Letters to the Editor" column published ten years previously in The Chief-Leader newspaper. The City and Commissioner Nigro moved pre-answer to dismiss the Nigro Action. The District Court, by Memorandum Decision and Order dated March 11, 2021, granted the dismissal motion to the extent that Gala's claims against Commissioner Nigro were dismissed on the grounds of qualified immunity, and denied the remainder of the dismissal motion. See Gala v City of New York, 525 F. Supp. 3d 425 (E.D.NY 2021).
In April 2021, Gala moved for leave to amend his complaint in the Nigro Action to allege that "Commissioner Nigro passed him over for promotion to Assistant Chief on other occasions before May 2020." See Gala v City of New York, 2021 WL 1700315, *1 (E.D.NY 2021). The District Court, by Memorandum Decision and Order dated April 29, 2021, granted in part, Gala's motion for leave to amend. See Id. The District Court permitted Gala to file an amended complaint in the Nigro Action to allege Commissioner Nigro's additional instances of failure to promote him, with the proviso that Commissioner Nigro (but not the City) remained dismissed [*3]from the Nigro Action. See Gala v City of New York, 2021 WL 1700315, *2 (E.D.NY 2021).
On April 30, 2021, Gala filed his First Amended Complaint in the Nigro Action.[FN3]
Therein, Gala alleged that Commissioner Nigro unlawfully: (1) denied him a promotion to Assistant Chief (a three-star chief) on eight separate occasions between September 15, 2018 and May 23, 2020; (2) denied him an interview for the position of Chief of Department in January 2019; and (3) removed him from the position of Manhattan Deputy Borough Commander on April 20, 2019.[FN4]
Gala further alleged that "[s]ince May 2020, Commissioner Nigro and the City have continued to deny [him] the promotion to Assistant Chief."[FN5]

By Settlement Agreement dated June 17, 2021, Commissioner Nigro and the City settled the Nigro Action (the "Nigro-Action Settlement").[FN6]
The Nigro-Action Settlement provided that:
(1) "On or before June 23, 2021, [Commissioner Nigro and the City] shall promote [Gala] to Assistant Chief at...FDNY, effective retroactively to May 23, 2020."[FN7]
;
(2) "[Commissioner Nigro and the City] shall not reassign [Gala] during Daniel A. Nigro's tenure as Fire Commissioner without [Gala's] written consent.[FN8]
(Emphasis added); and
(3) the City would pay Gala's attorneys' fees.[FN9]

In consideration for the foregoing, Gala executed and delivered to the City a General Release dated June 18, 2021 (the "Nigro-Action Release").[FN10]
The Nigro-Action Release provided, in relevant part, that:
"[Gala] release[s] and discharge[s] defendant City of New York, its successors, or assignees, and all present or former officials, employees, representatives or agents of the City of New York or any entity represented by the Office of the Corporation Counsel, collectively, the 'RELEASEES,' from any liability, claims, appeals, demands, liabilities, damages, indebtedness and/or causes of action, of any kind whatsoever, which [he has] or may have against any of the Released Parties, based on any act, omission, event or occurrence, whether known or unknown, joint or several, whether discoverable or not, from the beginning of the world up through and including the date of [his] execution of this General Release [i.e., June 18, 2021], including, without limitation, any and all claims which were, or could have been, raised arising out of the events alleged in this [*4][Gala] action and including, but not limited to, all claims for attorneys' fees and costs, any right or claim under 42 U.S.C. § 1983, that may exist or arise up to and including the date that this General Release is signed, and any and all other liability, claims or rights of action that may exist or arise up to and including the date that this General Release is signed." (Emphasis added).[FN11]
With the Nigro-Action Settlement and Release having been consummated, the Nigro Action was dismissed and closed on May 21, 2021.
Kavanagh Action
On February 27, 2023, Plaintiffs Gala, Joseph Jardin ("Jardin"), Michael Massucci ("Massucci"), and Fred Schaaf ("Schaaf" and collectively with Gala, Jardin, and Massucci, the "Original Plaintiffs") commenced a hybrid CPLR Article 78 proceeding and plenary action under 42 USC § 1983 and the Due Process Clause of the Fourteenth Amendment against the FDNY and Commissioner Kavanagh (as Commissioner Nigro's successor)[FN12]
in this court under Index No. 506192/2023 (the "Kavanagh Action"). All four Original Plaintiffs in the Kavanagh Action alleged (in ¶ 1 of their operative pleading) that "[t]his case is about one thing: the safety of the public and valiant firefighters of the [FDNY]." According to the operative pleading in the Kavanagh Action, all four Original Plaintiffs were high-level officials at the FDNY who had been demoted or reassigned. Three of the four Original Plaintiffs Gala, Jardin, and Schaaf, who held the post of Assistant Chief at the FDNY, were demoted two ranks by Commissioner Kavanagh on February 3, 2023.[FN13]
 In addition, three of the four Original Plaintiffs Gala, Jardin, and Schaaf were immediately relieved of their duties as Incident Commanders [FN14]
, with the official demotions (and the associated changes to rank and salary) then scheduled to take effect on March 4, 2023. Remaining Original Plaintiff, Massucci, who was a Deputy Assistant Chief, alleged that in November 2022 he was constructively demoted by way of a reassignment from his role as Chief of Uniformed Personnel to a post in the "'Toolroom'. . . with no clear role or responsibilities."[FN15]

In the Kavanagh Action, the Original Plaintiffs contended that they were entitled to an Order under CPLR § 7803(3) compelling their reinstatement to their respective former positions and responsibilities, because Commissioner Kavanagh's and the FDNY's respective decisions were arbitrary, capricious, irrational, an abuse of discretion, and violated the FDNY's internal procedures. In addition, the Original Plaintiffs contended that because Commissioner Kavanagh and the FDNY made statements about the Original Plaintiffs that allegedly damaged their reputation in connection with the challenged personnel decisions, they were entitled under 42 USC § 1983 and the Due Process Clause of the Fourteenth Amendment to a name-clearing hearing and a declaration that their constitutional rights had been violated.
Concurrently with their commencement of the Kavanagh Action on February 27, 2023, the Original Plaintiffs requested emergency relief in the form of a temporary restraining order ("TRO") that would stop the formal demotions of three Original Plaintiffs Gala, Jardin, and Schaaf from going into effect on March 4, 2023, and that would require Commissioner Kavanagh to restore them to their previously held duties. After Commissioner Kavanagh and FDNY removed the Kavanagh Action to the District Court, the Original Plaintiffs renewed their request for a TRO before that court.
By Memorandum and Order dated March 2, 2023, the District Court denied the Original Plaintiffs' request for a TRO, finding they failed to meet the stringent showing needed to obtain an emergency injunction that would immediately restore them to their former duties and prohibit their demotions. See Gala v Kavanagh, 2023 WL 2356025, *1 (E.D.NY 2023). By the ensuing Memorandum and Order dated March 3, 2023, the District Court denied the Original Plaintiffs' request for leave to reconsider its initial determination, noting that "[a]s a general matter, how the New York City Fire Department...should be run is a matter entrusted to elected political leaders and their appointees like the F.D.NY Commissioner." Gala v Kavanagh, 2023 WL 2349580, *1 (E.D.NY 2023). Thereafter, by Orders dated March 13, 2023 as to Original Plaintiff Schaaf, and dated March 24, 2023 as to remaining Original Plaintiffs Gala, Jardin, and Massucci, the District Court voluntarily dismissed and terminated the Kavanagh Action.
Instant Action
On March 23, 2023, three of the four Original Plaintiffs in the Kavanagh Action (Gala, Jardin, and Massucci) commenced this instant action for age discrimination, unlawful retaliation, and hostile work environment under the New York State Human Rights Law ("NYSHRL") (Executive Law § 296, et seq.) and the New York City Human Rights Law ("NYCHRL") (Administrative Code of City of New York § 8-107), by filing the Original Complaint dated March 23, 2023. The Original Complaint consisted of 142 paragraphs spanning 53 pages.[FN16]

On May 5, 2023, in their filing of the First Amended Complaint dated May 5, 2023 ("FAC"), Plaintiffs Gala, Jardin and Massucci (three of the four Original Plaintiffs in the Kavanagh Action) were joined by three additional Plaintiffs: James Booth ("Booth"), Frank Leeb ("Leeb"), and Carla Murphy ("Murphy"; collectively with Booth and Leeb, the "Additional Plaintiffs").[FN17]
Asserting the same claims as were lodged in the Original Complaint, the FAC consisted of 164 paragraphs (up from 142 paragraphs of the Original Complaint) spanning 77 [*5]pages (up from 53 pages of the Original Complaint).[FN18]

On July 10, 2023, all four Original Plaintiffs in the Kavanagh Action (Gala, Jardin, Massucci, and now Schaaf) joined by three Additional Plaintiffs (Booth, Leeb, and Murphy; collectively, "Plaintiffs"), filed their joint Second Amended Complaint dated July 10, 2023 ("SAC").[FN19]
Asserting the same claims as were lodged in the FAC, the SAC consisted of 166 paragraphs (up from 164 paragraphs in the FAC) spanning 88 pages (up from 77 pages of the FAC).[FN20]

On July 31, 2023, pursuant to CPLR § 3024(b), Defendants moved for an Order striking certain allegations from the SAC [FN21]
and Plaintiffs opposed.[FN22]
By Decision/Order dated December 21, 2023, the Court granted in part and denied in part Defendants' motion to strike, and directed Plaintiffs to file and serve their Third Amended Complaint in accordance with the Court's rulings set forth in its Decision/Order.[FN23]
See Booth v City of New York, 81 Misc 3d 1224(A), 2023 NY Slip. Op. 51442(U) (Sup. Ct., Kings County 2023).
On January 25, 2024, Plaintiffs filed and served their Third Amended Complaint dated January 25, 2024 ("TAC").[FN24]
The TAC is verified by each Plaintiff and consists of 159 paragraphs (down from 166 paragraphs in the SAC) spanning 69 pages (down from 88 pages in the SAC).[FN25]

Like each of its predecessors, the TAC is grounded on the legal theories of age discrimination, unlawful retaliation, and hostile work environment under the NYSHRL and NYCHRL. The same set of allegations of the TAC (or more precisely, the same operative paragraph of allegations), underlies each of the First through Sixth causes of action for age discrimination, unlawful retaliation, and hostile work environment in violation of the NYSHRL and NYCHLR, respectively.[FN26]
 Regardless of which cause of action is used to support the TAC, the operative paragraph of those allegations reads in full, as follows:
"The conduct of Defendants constituted an unlawful discriminatory practice. Plaintiffs were subjected to inferior terms, conditions, or privileges of their employment due to [*6]their membership in a protected class, including but not limited to Defendants: (a) withholding or threatening to withhold benefits from them; (b) undermining their efforts to meet their responsibilities; (c) excluding them from meetings; (d) improperly cutting off their computer access; (e) leaking false information about them to the press; (f) subjecting them to humiliating reassignments; (g) demoting them; and (h) further disparaging them both in the press and during internal FDNY meetings, resulting in emotional distress. Defendants' conduct constituted a serious and pervasive, but at the least, unlawful discriminatory practice that significantly harmed Plaintiffs in the terms, conditions, or privileges of their employment."[FN27]
On February 26, 2024, Defendants served the instant pre-answer motion for an Order, pursuant to CPLR § 3211(a)(5) and (7), dismissing some or all of the claims asserted in the TAC as partially time-barred, as partially barred by the Nigro-Action Release, and in general, for failure to state a cause of action.[FN28]
On June 5, 2024, the Court heard oral argument and reserved decision.
Standard of Review
"On a motion to dismiss a complaint pursuant to CPLR [§] 3211(a)(5) on statute of limitations grounds, the moving defendant must establish, prima facie, that the time in which to commence the action has expired." Baptiste v Harding-Marin, 88 AD3d 752, 753 (2d Dept. 2011), lv denied 19 NY3d 808 (2012). "If the defendant satisfies this burden, the burden shifts to the plaintiff to raise a question of fact as to whether the statute of limitations was tolled or otherwise inapplicable, or whether the plaintiff actually commenced the action within the applicable limitations period." U.S. Bank N.A. v Bernice 380 Corp., 186 AD3d 1750, 1752 (2d Dept. 2020).
Separately, but likewise pursuant to CPLR § 3211(a)(5), "[a] party may move for judgment dismissing one or more causes of action asserted against him [or her] on the ground that...the cause of action may not be maintained because of [a] release." Liu v Kirkwood, 222 AD3d 861, 861 (2d Dept. 2023). "Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release." Centro Empresarial Cempresa S.A. v American Movil, S.A.B. de C.V., 17 NY3d 269, 276 (2011) (internal quotation marks omitted).
Lastly, "[o]n a motion to dismiss pursuant to CPLR [§] 3211 [a][7], the pleading is to be afforded a liberal construction." Leon v Martinez, 84 NY2d 83, 87 (1994). "[The Court must] accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory." Id. at 87-88. "[T]he sole criterion is whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail." Guggenheimer v Ginzburg, 43 NY2d 268, 275 (1977). "Whether a complaint will later survive a motion for summary judgment or whether the plaintiff will ultimately be able to prove its claims plays no part in the determination of a prediscovery motion to dismiss pursuant to CPLR [§] 3211(a)(7)." Waluyn v Access-A-Ride, — AD3d &mdash, 2024 NY Slip Op 04097, *2 (2d Dept. 2024). "In addition, [*7]employment discrimination cases are themselves generally reviewed under notice pleading standards," such that a plaintiff alleging employment discrimination need not plead specific facts establishing a prima facie case of discrimination but need only give fair notice of the nature of the claim and its grounds. See Vig v New York Hairspray Co., L.P., 67 AD3d 140, 145 (1st Dept. 2009). Similarly, "[p]laintiffs in retaliation cases are held to a lenient notice pleading standard and are generally afforded deference at the pleading stage." Herskowitz v State, 222 AD3d 587, 588 (1st Dept. 2023).
Discussion
Plaintiffs Booth's and Jardin's Time-Barred Claims
"Pursuant to CPLR § 214 (2) [and Administrative Code § 8-502(d)], a cause of action for discrimination under the NYSHRL and the NYCHRL [, respectively,] must be commenced within three years following the events leading to the claim." Thompson v City of New York, 83 Misc 3d 1213(A), 2024 NY Slip. Op. 50701(U), *3 (Sup Ct, Kings County 2024). "[D]ue to the tolling provision of the [pandemic-related] executive orders, the statute of limitations within which [a] plaintiff was required to commence [his or her] action was tolled between March 20, 2020, and November 3, 2020, a period of 228 days." McLaughlin v Snowlift, Inc., 214 AD3d 720, 721 (2d Dept. 2023).
Here, Plaintiffs concede that " . . . we agree Plaintiff Booth missed the statute of limitations by a few months and consent to [the] dismissal of claims on his behalf..."[FN29]
Accordingly, pursuant to CPLR § 3211(a)(5), Plaintiff Booth's claims are dismissed in their entirety as time-barred. In addition, pursuant to CPLR § 3211(a)(5), Plaintiff Jardin's claims arising out of Commissioner Kavanagh's rejection "[i]n the fall of 2017" of his plan for "an additional 'Rehabilitation and Care' vehicle to treat firefighters for exposure at the scene of a fire,"[FN30]
are dismissed as time-barred.
Plaintiff Gala's Released Claims
Plaintiff Gala's claims, to the extent accrued before June 18, 2021, are barred by the Nigro-Action Release. Accordingly, pursuant to CPLR § 3211(a)(5), Plaintiff Gala's claims, insofar as grounded on the allegations in TAC ¶¶ 79(g), (h), (i), and (j), are dismissed as released by the Nigro-Action Release. Pursuant to CPLR § 3211(a)(7), Plaintiff Gala's additional allegation that Commissioner "Kavanagh violated the terms of [the Nigro-Action] settlement agreement" by reassigning him to a lower rank than Assistant Chief [FN31]
is dismissed as meritless because the Nigro-Action Settlement expressly provided that his promotion to the position of Assistant Chief would not be affected for the duration of then Commissioner Nigro's tenure,[FN32]
whereas his demotion occurred after Commissioner Nigro was succeeded by Commissioner Kavanagh.
Plaintiffs' Age-Discrimination Claims
Accepting the facts as alleged in the TAC as true, and according said facts the benefit of every favorable inference as required by CPLR § 3211(a)(7), the Court finds that Plaintiffs Gala, Jardin, Leeb, Massucci, and Schaaf (not Plaintiff Murphy) have sufficiently pleaded causes of action sounding in age discrimination under the NYSHRL and NYCHRL in the First and Fourth Causes of Action of the TAC, respectively. See Okeke v Interfaith Med. Ctr., 224 AD3d 763, 765 (2d Dept. 2024); Gregorian v New York Life Ins. Co., 211 AD3d 711, 712 (2d Dept. 2022); Ayers v Bloomberg, L.P., 203 AD3d 872, 875 (2d Dept. 2022).
Here, the TAC adequately alleges that Plaintiffs Gala, Jardin, Leeb, Massucci, and Schaaf were each a member of a protected class, were qualified to hold their respective positions, and were treated less well than other similarly ranked FDNY officers. Further, the TAC also adequately alleges that Plaintiffs Gala, Jardin, Leeb, Massucci, and Schaaf, each over the age of 50, were each treated differently under the circumstances giving rise to an inference of age discrimination. See Okeke, 224 AD3d at 765; Ayers, 203 AD3d at 875; Mirro v City of New York, 159 AD3d 964, 966 (2d Dept. 2018); Grella v St. Francis Hosp., 149 AD3d 1046, 1048 (2d Dept. 2017).
The TAC's unified legal theory that Defendants' actions were motivated by the age-related bias against Plaintiffs Gala, Jardin, Leeb, Massucci, and Schaaf, is supported by the specific factual allegations, including that:
(1) Plaintiff Gala was reassigned to work as "Chief Quartermaster" in November 2022, and was subsequently demoted to the position of Deputy Chief, effective March 4, 2023;[FN33]

(2) Plaintiff Jardin was reassigned to a role within the Bureau of Operations on July 18, 2022, and was subsequently demoted to the position of Deputy Chief, effective March 4, 2023;[FN34]

(3) Plaintiff Leeb was reassigned from his position as acting Chief of Training to Chief of Safety in November 2022, which reassignment precluded him from seeking promotion to the position of Chief of Training;[FN35]

(4) Plaintiff Massucci was relieved of his duties as Chief of Personnel, was reassigned to the Bureau of Operations on November 21, 2022, and was subsequently directed to work in the off-site Tech Services Toolroom with no real responsibilities and no subordinates or direct reports;[FN36]
and
(5) Plaintiff Schaaf was reassigned to the position of Deputy Chief effective March 4, 2023.[FN37]

However, Plaintiff Murphy, unlike the other Plaintiffs, has not adequately pleaded that she was either terminated or treated differently under the circumstances giving rise to an inference of age-related discrimination. Although Plaintiff Murphy alleges that Commissioner Kavanagh's [*8]discharge of her from the FDNY on March 1, 2023 was motivated by the age-related bias, she does not advance any concrete factual allegation in support of that claim, other than that she was 56 years old at the time and that "her duties [were] assumed by a younger replacement."[FN38]
Rather, Plaintiff Murphy alleges that "[b]y the fall of 2021, [she] suffered a series of adverse actions in retaliation for not 'going along' with unsafe conditions."[FN39]
Plaintiff Murphy's age-related discrimination allegations amount to mere legal conclusions, and do not suffice to make out this element of her claim. See Lewkowicz v Terence Cardinal Cook Health Ctr., 212 AD3d 443, 444 (1st Dept. 2023), lv denied 39 NY3d 914 (2023); Hosking v Memorial Sloan-Kettering Cancer Ctr., 186 AD3d 58, 67 (1st Dept. 2020); Askin v Department of Educ. of City of NY, 110 AD3d 621, 622 (1st Dept. 2013). Plaintiff Murphy's initial allegation in TAC ¶ 4 that she was "unceremoniously fired without cause" is at odds with her subsequent allegations in TAC ¶¶ 86(r), (t), (u), and (v) that she was served with a total of 51 disciplinary charges between August 19, 2022 and December 6, 2022, for the alleged time-keeping improprieties dating back to December 3, 2021, and that she was dismissed from the FDNY on March 1, 2023 after an FDNY Hearing Officer (following a Step 1 Conference held on January 31, 2023) recommended on February 9, 2023 that she be dismissed. Plaintiff Murphy's dismissal on account of her alleged time-keeping improprieties defeats her age-discrimination claim because she was not "subject to an unfavorable employment change or treated less well than other employees on the basis of a protected characteristic [i.e., her age]." Acala v Mintz Levin Cohn Ferris Glovsky & Popeo, P.C., 222 AD3d 706, 707 (2d Dept. 2023) (internal quotation marks omitted; emphasis added). Accordingly, Pursuant to CPLR § 3211(a)(7), the branch of Defendants' motion for an Order dismissing Plaintiffs' age-discrimination claims in the First and Fourth Causes of Action of the TAC is granted only to the extent that Plaintiff Murphy's age-discrimination claims under the NYSHRL and NYCHRL are dismissed as against all Defendants, and is otherwise denied.
Plaintiffs' Hostile Work Environment Claims
Here, the operative allegations supporting Plaintiffs' hostile work environment claims under the NYSHRL and NYCHRL in the Second and Fifth Causes of Action of the TAC ¶¶ 120 and 144, respectively, are word-for-word identical to those pleaded in support of Plaintiffs' age-discrimination claims under the NYSHRL and NYCHRL in the First and Fourth Causes of Action of the TAC ¶¶ 113 and 137, respectively. In particular, in support of both the hostile work environment claims and the age-discrimination claims, Plaintiffs allege that "[a]fter Plaintiffs took actions to protect themselves from Defendants' discriminatory treatment, Defendants subjected Plaintiffs to a pattern of discrimination due to the fact that they were at, above, or close to the age of 60, which led to adverse employment actions in violation of NYSHRL [or NYCHRL, as applicable]" (emphasis added).[FN40]
Such word-for-word identical and [*9]conclusory allegations in the TAC are insufficient to state a cause of action for hostile work environment. See Acala v Mintz Levin Cohn Ferris Glovsky & Popeo, P.C., 222 AD3d 706, 708 (2d Dept. 2023); Polite v Marquis Marriot Hotel, 195 AD3d 965, 967 (2d Dept. 2021); Reilly v First Niagara Bank, N.A., 173 AD3d 1082, 1082 (2d Dept. 2019). Accordingly, pursuant to CPLR § 3211(a)(7), the branch of Defendants' motion for an Order dismissing Plaintiffs' hostile work environment claims under the NYSHRL and NYCHRL in the Second and Fifth Causes of Action of the TAC, respectively, is granted, and Plaintiffs' hostile work environment claims are dismissed against all Defendants.
Plaintiffs' Unlawful Retaliation Claims
As this Court recently summarized the law in this area: "To state a claim for retaliation under NYSHRL, a plaintiff must show that: (1) they were engaged in protected activity; (2) their employer was aware of the participation in such activity; (3) they suffered an adverse employment action based upon said activity; and (4) there is a causal connection between the protected activity and the adverse action. An adverse employment action, in the context of unlawful retaliation, is an action which may have dissuaded a reasonable worker from making or supporting a charge of discrimination. The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. NYCHRL offers broader protection with regard to a retaliation claim. Under NYCHRL, a plaintiff must show that: (1) they engaged in a protected activity as defined under the NYCHRL; (2) their employer was aware of that participation in such activity; (3) the employer engaged in conduct that was reasonably likely to deter a person from engaging in that protected activity; and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct." Thompson, 2024 NY Slip. Op. 50701(U), *7 (internal quotation marks omitted and citations omitted).
Here, the TAC adequately pleaded a cause of action for unlawful retaliation in violation of the NYSHRL and NYCHRL as to Plaintiffs Gala, Jardin, Massucci, and Schaaf (but not as to Plaintiffs Leeb and Murphy). In particular, the TAC alleges that Defendants retaliated against Plaintiffs Gala, Jardin, Massucci, and Schaaf (but not against Plaintiffs Leeb and Murphy) following such Plaintiffs' protected acts of: (1) prosecuting the Nigro Action by Plaintiff Gala; (2) prosecuting the Kavanagh Action by Plaintiffs Gala, Jardin, Massucci, and Schaaf; and (3) lodging complaints with the FDNY's top management regarding their unjustified demotions and reassignments.
In addition, such alleged retaliatory conduct as against Plaintiffs Gala, Jardin, Massucci, and Schaaf (but not as against Plaintiffs Leeb and Murphy) included the following: (1) denial to Plaintiff Gala of the remote computer access, as well as of the direct computer access to the F.D.NY Emergency Notification System;[FN41]
(2) refusal to transfer Plaintiffs Gala, Jardin, and Schaaf to their respective requested divisions;[FN42]
(3) termination of Plaintiff Massucci's access to [*10]the FDNY computer network;[FN43]
and (4) removal of Plaintiff Schaaf from his position as Queens Borough Commander.[FN44]
On the other hand, the TAC fails to adequately allege unlawful retaliatory conduct against Plaintiffs Leeb and Murphy. See Polite, 195 AD3d at 967; McIntosh v City of NY, 79 Misc 3d 1231(A), 2023 NY Slip. Op. 50761(U), *4 (Sup. Ct., Kings County 2023). Accordingly, pursuant to CPLR § 3211(a)(7), the branch of Defendants' motion for an Order dismissing Plaintiffs' unlawful retaliation claims under the NYSHRL and NYCHRL is granted only to the extent that the unlawful retaliation claims by Plaintiffs Leeb and Murphy are dismissed as against all Defendants, and is otherwise denied.
Plaintiffs' Claims Against Defendants Banks and Pfeifer
As a separate and standalone point, Defendants contend that Plaintiffs' claims as against Defendants Banks and Pfeifer should be dismissed for "lack of personal involvement." See Defendants' Memorandum of Law in Support, Point V, pages 23-24 (NYSCEF # 60).
An employee who did not participate in the primary violation itself, but who aided and abetted that conduct, may be individually liable based on those actions under both the NYSHRL and NYCHRL. See Executive Law § 296(6); Administrative Code § 8-107(6). The NYSHRL and NYCHRL both specify that it is "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [thereunder], or to attempt to do so." Executive Law § 296(6); Administrative Code § 8-107(6). "Where a defendant provided, or attempted to provide, assistance to the individual or individuals participating in the primary violation, he or she may be found liable for aiding and abetting discriminatory conduct." Ananiadis v Mediterranean Gyros Prods., Inc., 151 AD3d 915, 917 (2d Dept 2017).
Accepting the facts as alleged in the TAC as true (TAC ¶¶ 9, 21, 23, 68, 80[h], 85[l][v], 85[r][ii], 85[r][iv], 91, 92, 93, 98, 99, and 106), and according Plaintiffs the benefit of every possible favorable inference, Plaintiffs Gala, Jardin, Leeb, Massucci, and Schaaf (but not Plaintiff Murphy) have alleged facts sufficient to state a cause of action against Defendants Banks and Pfeifer under the NYSHRL and NYCHRL because they, at a minimum, allegedly aided and abetted Commissioner Kavanagh in discriminating against them on the basis of age. In addition, Plaintiffs Gala, Jardin, Massucci, and Schaaf (but not Plaintiffs Leeb and Murphy) have alleged facts sufficient to state a cause of action against Defendants Banks and Pfeifer for aiding and abetting Commissioner Kavanagh in unlawfully retaliating against them. See Oluwo v Sutton, 206 AD3d 750, 752 (2d Dept 2022); Mitchell v TAM Equities, Inc., 27 AD3d 703, 707 (2d Dept 2006); Walker v Triborough Bridge & Tunnel Auth., 220 AD3d 554, 555 (1st Dept 2023); Ajoku v New York State Off. of Temporary & Disability Assistance, 198 AD3d 437, 438 (1st Dept 2021), lv denied 38 NY3d 908 (2022).
Accordingly, pursuant to CPLR § 3211(a)(7), the remaining branch of Defendants' motion for an Order dismissing all claims against Defendants Banks and Pfeifer is granted only to the extent that Plaintiff Murphy's claims against them are dismissed, and is otherwise denied. See Walker, 220 AD3d at 555; Petit v Department of Educ. of City of NY, 177 AD3d 402, 403 (1st Dept 2019).
Plaintiffs' Request for Punitive Damages
Plaintiffs' demand for punitive damages against the City (in TAC ¶¶ 118, 125, 135, 142, 149, 159, and in "Wherefore" clause "b") is against the prevailing law. See Krohn v New York City Police Dept., 2 NY3d 329, 338 (2004). Plaintiffs' demand for punitive damages against the City is stricken.
Conclusion
Upon the filing and reading of the Third Amended Complaint, Defendants' pre-answer motion to Dismiss, and the parties' respective submissions in support and opposition thereto, and upon the oral argument held on June 5, 2024, the Court grants the motion in part and denies it in part, as more fully set forth above.
In light of the dismissal of Plaintiffs Booth and Murphy from this action, the action is severed and continued by the remaining Plaintiffs as against all Defendants. All allegations relating to Plaintiffs Booth and Murphy (in particular, Plaintiff Murphy's epigraph on page 1 of the TAC, as well as the related allegations in TAC ¶¶ 4, 13, 18, 59, 75, and 86) are stricken from the TAC.
The caption is amended to read in its entirety as follows:
--------------------------------------------------------------------------X
Michael Gala, Joseph Jardin, Frank Leeb,
Michael Massucci, and Fred Schaaf,                                               Index # 509034/2023
                                                           Plaintiffs,                               against
The City of New York, Philip Banks III, as Deputy
Mayor for Public Safety and in his Individual Capacity,
Laura Kavanagh, as Commissioner of the New York
City Fire Department and in her Individual Capacity,
Joseph Pfeifer, as First Deputy Commissioner and in
his Individual Capacity, Luis Martinez, as Chief of
Staff and in his Individual Capacity, and JonPaul
Augier, as Deputy Commissioner of FDNY
Infrastructure & Innovation and in his Individual
Capacity,                                                           Defendants.--------------------------------------------------------------------------X
Pursuant to CPLR § 3211(f), Defendants are directed to answer the extant portions of the Third Amended Complaint within ten (10) calendar days after electronic service of this Decision and Order with Notice of Entry by Plaintiffs' counsel on the Corporation Counsel. The parties are directed to proceed as directed following their June 10th, 2024 preliminary conference are to appear for their compliance conference scheduled for March 4th, 2024.
This constitutes the Decision and Order of the court.
Dated: August 21, 2024
Brooklyn, New York
Hon. Patria Frias-Colón, J.S.C.

Footnotes

Footnote 1:On August 12, 2024, New York City Mayor Eric Adams announced the appointment of, and swore in, Robert S. Tucker, Esq., as the 35th commissioner of the FDNY, to succeed Defendant Laura Kavanagh. The press release is available at https://www.nyc.gov/office-of-the-mayor/news/628-24/mayor-adams-appoints-robert-tucker-35th-fire-commissioner-fdny#:~:text=%E2%80%9CIt%20is%20my%20privilege%20to,personal%20ties%20to%20the%20FDNY (last accessed August 12, 2024). "[M]aterial derived from official government websites may be the subject of judicial notice." Kingsbrook Jewish Med. Ctr. v Allstate Ins. Co., 61 AD3d 13, 20 (2d Dept. 2009).

Footnote 2:Although Defendants also move for dismissal pursuant to CPLR § 3211(a)(1), their arguments are confined to CPLR §§ 3211(a)(5) and (7). See NYSCEF Doc. # 60 at pp. 9-24.

Footnote 3:NYSCEF Doc. # 56.

Footnote 4:Id. at ¶¶ 27-29.

Footnote 5:Id. at ¶ 40.

Footnote 6:NYSCEF Doc. # 57.

Footnote 7:Id. at ¶ 1.

Footnote 8:Id. at ¶ 2.

Footnote 9:Id. at ¶ 3.

Footnote 10:NYSCEF Doc. # 58.

Footnote 11:See Id.

Footnote 12:"On February 16, 2022, Mayor Eric Adams announced the appointment of Defendant Kavanagh as acting Commissioner of FDNY following the retirement of Commissioner Nigro, who led the department for eight years." See NYSCEF Doc. # 50 at ¶ 35. "On October 27, 2022, Defendant Kavanagh was appointed and sworn in as Fire Commissioner." Id. at ¶ 72(k).

Footnote 13:As noted, the Nigro-Action Settlement provided that Gala would retain his promotion to the position of Assistant Chief during Commissioner Negro's tenure.

Footnote 14:"Incident Commander" is the FDNY's term for "commanding officers" in charge of "any fire that requires three alarms or more."

Footnote 15:See NYSCEF docket for Michael Gala et al. v. Laura Kavanagh et al. under Index No. 506192/2023 (Doc. #1).

Footnote 16:NYSCEF Doc. # 1.

Footnote 17:NYSCEF Doc. # 10.

Footnote 18:Id.

Footnote 19:NYSCEF Doc. # 23.

Footnote 20:Id.

Footnote 21:NYSCEF Doc. # 38.

Footnote 22:NYSCEF Doc. # 43.

Footnote 23:NYSCEF Doc. # 48.

Footnote 24:NYSCEF Doc. # 50.

Footnote 25:See Id.

Footnote 26:Id. at ¶¶ 114, 121, 130, 138, 145, and 154.

Footnote 27:Id.

Footnote 28:NYSCEF Doc. # 52.

Footnote 29:NYSCEF Doc. # 64 at p. 21, fn. 12.

Footnote 30:NYSCEF Doc. # 50 at ¶ 80(f).

Footnote 31:Id. at ¶ 79(r).

Footnote 32:NYSCEF Doc. # 57 at ¶ 2.

Footnote 33:NYSCEF Doc. # 50 at ¶¶ 79(l), (m), (n), (p), and (s).

Footnote 34:Id. at ¶¶ 80(h) and (i).

Footnote 35:Id. at ¶ 81(g).

Footnote 36:Id. at ¶¶ 85(l) and (n).

Footnote 37:Id. at ¶ 87(a).

Footnote 38:See Id. at ¶¶ 4, 18, and 86(a).

Footnote 39:Id. at ¶ 86(h).

Footnote 40:Compare NYSCEF Doc. # 50 at ¶ 120 with Id. at ¶ 113 (Second and First Causes of Action for Hostile Work Environment and Age-Discrimination Claims under NYSHRL, respectively). Compare Id. at ¶ 144 with Id. at ¶ 137 (Fifth and Fourth Causes of Action for Hostile Work Environment and Age-Discrimination Claims under NYCHRL, respectively).

Footnote 41:NYSCEF Doc. # 50 at ¶¶ 79(o) and (x).

Footnote 42:Id. at ¶ 79(t).

Footnote 43:Id. at ¶ 85(o).

Footnote 44:Id. at ¶ 87.