Hosking v Memorial Sloan-Kettering Cancer Ctr. (2020 NY Slip Op 03484)





Hosking v Memorial Sloan-Kettering Cancer Ctr.


2020 NY Slip Op 03484


Decided on June 18, 2020


Appellate Division, First Department


Acosta, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 18, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rolando T. Acosta, P.J.
Rosalyn H. Richter
Sallie Manzanet-Daniels
Judith J. Gische
Barbara R. Kapnick, JJ.


22678/13 11417 

[*1]Madeline Hosking, as the Administratrix of the Estate of Jeanette Martinez, Deceased, Plaintiff-Respondent-Appellant,
v
Memorial Sloan-Kettering Cancer Center, Defendant-Appellant-Respondent.



Cross appeal from an order of the Supreme Court, Bronx County (Lizbeth González, J.), entered September 21, 2016, which granted defendant's motion for summary judgment dismissing the complaint to the extent of dismissing plaintiff's claims for age discrimination under the New York State and City Human Rights Laws (State and City HRLs) and denied the motion to the extent it sought dismissal of plaintiff's claims for disability discrimination under the State and City HRLs.




Jones Day, New York (Terri L. Chase and Karen Rosenfield of counsel), for appellant-respondent.
Michael G. O'Neil, New York, for respondent-appellant.



ACOSTA, P.J.


At issue in this appeal is whether defendant, Memorial Sloan-Kettering Cancer Center (MSK), engaged plaintiff, a disabled employee, in a good faith dialogue to ascertain the possibility of a reasonable accommodation. We find that there are issues of fact as to whether defendant engaged in the required process, and accordingly, it is not entitled to summary judgment dismissing plaintiff's disability claims.
Plaintiff decedent, Jeanette Martinez, was hired by defendant MSK's Sidney Kimmel Center in Manhattan in April 2002 to work as a Guest Services Representative (informally referred to as the concierge position). Plaintiff performed functions commonly associated with that job title, including answering the phone and greeting and directing patients. By 2012, plaintiff was diagnosed with multiple disabling conditions that, together, restricted her from [*2]pushing, pulling, or lifting on the job, or working outdoors. Plaintiff was thus medically restricted from performing many of the doorman functions (another position based in the lobby), including pushing patients in wheelchairs or escorting them outside.
In 2012, defendant decided to move to a "pooled model" for five Kimmel Center job functions at the time filled by five separate employees and consolidate those positions into a unified "Kimmel Representative" position. Because of her medical restrictions, plaintiff informed defendant that she would be unable to perform most of the tasks associated with the consolidated position, except for the concierge function that she was already doing.
Plaintiff accordingly asked defendant to accommodate her by permitting her to remain exclusively in the concierge function. Defendant concluded, however, that it would be unable to accommodate her. According to defendant, keeping plaintiff permanently at the concierge position would directly impact the pooled model by requiring managers to station two employees in the lobby at all times. Defendant similarly reasoned that stationing plaintiff permanently at the concierge position would also interfere with managers' ability to prioritize in assigning employees. Managers' ability to shift the Kimmel Representatives would also be impacted on days when one or more of the employees was on vacation or otherwise absent.
Deposition testimony, however, raised issues regarding the extent to which defendant actually considered accommodating plaintiff. For instance, the Administrator for the Kimmel Center, Rosanna Fahy, initially testified that she did not recall whether plaintiff "asked for an accommodation or if she just articulated that she couldn't perform the duties." She then testified that she gave no consideration to accommodating plaintiff in the Kimmel Representative position. After having her recollection refreshed, she acknowledged that plaintiff requested an accommodation. She testified that she considered how much of the new position plaintiff could do. However, when asked whether she considered letting plaintiff "stay in the Kimmel rep position, doing the front door duties, the combination of Functions 3 and 4? Did anyone consider allowing her to do that?," she replied "I would not consider it." Fahy was then asked whether she considered having plaintiff do the rotation for those functions that she could do to which she replied "It doesn't work." She stated that "we discussed it," but that she did not try to create a schedule that would allow plaintiff to rotate to functions that she could perform.
Fahy's testimony was also inconsistent with that of Tina Sollazo, plaintiff's immediate supervisor's testimony. According to Sollazo, the only reason plaintiff was not permitted to stay in the concierge role was because she could not perform "any functions in the concierge position." However, plaintiff had satisfactorily performed the concierge job for 10 years.
Defendant's human resources department informed plaintiff that, although she would not be able to do the Kimmel Representative job, MSK would allow her to keep working as a concierge while applying for other available positions internally. Plaintiff applied for approximately 15 positions in a four-month period and went on seven job interviews. She was not hired for any of the open positions. On December 8, 2012, plaintiff was terminated effective December 31, 2012.
In her complaint, plaintiff asserted claims for disability and age discrimination under the State and City Human Rights Laws (State and City HRLs). Defendant served an answer denying liability and asserting affirmative defenses, including that it terminated plaintiff for legitimate, nondiscriminatory reasons, and that it met its obligations to accommodate plaintiff's conditions. Defendant then moved for summary judgment dismissing the complaint. The motion court granted defendant's motion to the extent of dismissing plaintiff's age discrimination claims.
On appeal, defendant argues that it is entitled to summary judgment dismissing plaintiff's disability discrimination claim because she could not perform the essential functions of the Kimmel Representative position with or without accommodation. On her cross appeal, plaintiff contends that issues of fact exist warranting reinstatement of her claim for age discrimination.
An employee "states a prima facie case of discrimination under both the State HRL and City HRL if the employee suffers from a statutorily defined disability and the disability caused the behavior for which the employee" suffered an adverse employment action (Jacobsen v New York City Health & Hosps. Corp., 22 NY3d 824, 834 [2014]; Harrington v City of New York, 157 AD3d 582, 585 [1st Dept 2018] ["Under the City HRL, the test is similar, though rather than an adverse action, the plaintiff must show only that the defendant took an action that disadvantaged' him or her"], quoting Fletcher v Dakota, Inc, 99 AD3d 43, 51-52 [1st Dept 2012]; Santiago-Mendez v City of New York, 136 AD3d 428, 429 [1st Dept 2016] [Under City HRL, the plaintiff must have been adversely or differently treated]; Cadet-Legros v New York Univ. Hosp. Ctr, 135 AD3d 196, 204 n 5 [1st Dept 2015] [Under City HRL, "the conduct in question is illegal so long as it was (at least in part) because of protected class status and operated to the disadvantage of the plaintiff"]).
Notably, the State and City HRL define "disability" in the employment context differently. The State HRL limits the term to "disabilities which, upon the provision of reasonable accommodations, do not prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation . . . held" (Executive Law § 292[21]). "Reasonable accommodation," in turn, means actions which permit an employee or prospective employee with a disability "to perform in a reasonable manner the activities involved in the job or occupation sought or held and include, but are not limited to, provision of an accessible worksite, acquisition or modification of equipment, . . . [or] job restructuring and modified work schedules," with the additional proviso that the accommodation does "not impose an undue hardship on the business, program or enterprise of the entity from which action is requested" (Executive Law § 292[21-e]; see also Jacobsen, 22 NY3d at 834).
In contrast to the State HRL, "the City HRL's definition of disability' does not include reasonable accommodation' or the ability to perform a job in a reasonable manner. Rather, the City HRL defines disability' solely in terms of impairments" (Romanello v Intesa Sanpaolo, S.p.A., 22 NY3d 881, 885 [2013]). The City HRL shifts the burden to the employer to show as an "affirmative defense that the person aggrieved by the alleged discriminatory practice could not, with reasonable accommodation, satisfy the essential requisites of the job . . . provided that the disability is known or should have been known by the [employer]" (Administrative Code of City of NY § 8-107[15][b]). Moreover, such "reasonable accommodation" should not "cause undue hardship in the conduct of the [employer's] business" (Administrative Code § 8-102).
Under both the State and City HRLs, "the first step in providing a reasonable accommodation is to engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested. The interactive process continues until, if possible, an accommodation reasonable to the employee and employer is reached" (Phillips v City of New York, 66 AD3d 170, 176 [1st Dept 2009]). As we noted in Phillips,
"Rather than operating on generalizations about people with disabilities, employers (and courts) must make a clear, fact-specific inquiry about each individual's circumstance.
[W]hen confronted with a disabled employee's request for reasonable accommodation, the employer is required to engage in a good faith interactive process whereby employer and employee clarify the individual needs of the employee and the business, and identify the appropriate reasonable accommodation. This good faith process is the key mechanism for facilitating the integration of disabled employees into the workplace. . . . [S]ummary judgment is available only where there is no genuine dispute that the employer has engaged in the interactive process in good faith" (66 AD3d at 175 [internal quotation marks omitted]).
Unlike the State HRL where the employer must "engage[] in interactions with the employee revealing at least some deliberation upon the viability of" an accommodation (Jacobsen v New York City Health & Hosps. Corp., 22 NY3d at 837), the City HRL clearly requires a more rigorous process (Phillips, 66 AD3d at 176 ["The State HRL provides protections broader than the ADA; and the City HRL is broader still"])[FN1]. Indeed, to emphasize the seriousness by which employers must engage in the interactive process, the City Council amended the City HRL in 2018 to codify Phillips (see Local Law No. 59 [2018] of the City of NY). The Committee Report in support of Local Law 59 states:
"This bill would clarify the reasonable accommodation requirement by expressly requiring, as a part of the reasonable accommodation process, that covered entities engage in a cooperative dialog with individuals who they know or should know may require accommodation.
"A cooperative dialog is the process by which a covered entity and a person who may be entitled to an accommodation engage, in good faith, in a written or oral dialogue concerning the person's accommodation needs, potential accommodations that may address those needs, and the difficulties that such accommodations may pose for the covered entity. The requirement for a cooperative dialog would apply to covered entities in the context of employment, public accommodations, and housing. Upon reaching a final determination at the conclusion of a cooperative dialog, covered entities in the context of employment and housing accommodations would be obligated to provide any person requesting an accommodation, who participated in the cooperative dialogue, with a written final determination identifying any accommodation granted or denied" (Report of the Governmental Affairs Division, Committee on Civil Rights, December 18, 2017, p. 3).
Significantly, this "bill . . . legislatively modif[ied] the holding of Jacobsen v New York City Health & Hosp. Corp., 22 NY3d 824, 838 (2014), which held that refusal to engage in a good faith interactive process is not independently actionable under the HRL" (id. at 4; see Administrative Code § 8-107[28][a] ["It shall be an unlawful discriminatory practice for an [*3]employer, labor organization or employment agency or an employee or agent thereof to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require such an accommodation: (2) Related to a disability"]; Local Law 59 § 2).
Section one of Local Law 59 also amended section 8-102 [definitions] of the City HRL by adding a subdivision entitled "cooperative dialogue."
"The term cooperative dialogue' means the process by which a covered entity and a person entitled to an accommodation, or who may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity."
Here, defendant cannot prevail in its summary judgment motion seeking to dismiss plaintiff's State HRL disability claim because there are issues of fact as to whether defendant engaged plaintiff in a good faith interactive process to ascertain the viability of an appropriate accommodation. Instead, it essentially told plaintiff that she did not fit within the new model and that she should apply for another position within the hospital. Although defendant claims that it engaged in the process in good faith, the testimony of two of its employees suggest otherwise.
For instance, as noted above, Fahy stated that she gave no consideration to accommodating plaintiff in the Kimmel Representative position. Later on, when asked whether she considered letting plaintiff "stay in the Kimmel rep position, doing the front door duties, the combination of Functions 3 and 4? Did anyone consider allowing her to do that?," she replied "I would not consider it." Fahy was then asked whether she considered having plaintiff do the rotation for those functions that she could do to which she replied "It doesn't work." She stated that "we discussed it," but that she did not try to create a schedule that would allow plaintiff to rotate to functions that she could perform.
Significantly, Fahy's testimony was inconsistent with plaintiff's immediate supervisor, Sollazo, who stated that the only reason plaintiff was not permitted to stay in the concierge role was because she could not perform "any functions in the concierge position," notwithstanding that plaintiff had satisfactorily performed the concierge job for 10 years.
Instead, defendant relies on its unilateral determinations and self-serving statements that the ability to perform all the tasks within the new model is essential to the position, rather than the fact-specific individualized inquiry required by the State HRL (see Phillips, 66 AD3d at 175 and cases cited therein). However, it is not clear from the record that all the functions of the new model are essential. Indeed, each separate function is performed by a Kimmel Representative only 20 percent of the time and four other employees are available to perform functions that plaintiff could not perform. Moreover, there are questions regarding MSK's hardship if plaintiff is not required to rotate into other positions since the new model mandated that a Kimmel Representative work in the concierge function at all times. Last, it is undisputed that plaintiff satisfactorily performed the concierge function for 10 years.
Defendant argues that its efforts were more than sufficient, quoting language in Jacobsen that "an employer faces an obstacle to summary judgment if the employer did not engage in interactions revealing at least some deliberation upon the viability of the employee's request" (Jacobsen, 22 NY3d at 837 [emphasis added]). However, language in Jacobsen stating that the record has to reveal "at least some deliberation" does not mean that an employer can take a haphazard approach to the interactive process or engage in it without taking the process [*4]seriously. As we stated in Phillips, "the employer is required to engage in a good faith interactive process whereby employer and employee clarify the individual needs of the employee and the business, and identify the appropriate reasonable accommodation" (Phillips, 66 AD3d at 175). There is no rule that an employer has to engage in the process for a certain number of days or that it ultimately has to give the employee what the employee is demanding. However, the process has to be held in good faith and the essential functions of the position need to be part of the interactive process the law requires, not a unilateral employer decision cloaked by business judgement. Indeed, what happened here "is a long way from the framework of cooperative problem solving based on open and individualized exchange in the workplace that the [Americans with Disabilities Act [ADA] intended" (Phillips, 66 AD3d at 175).
Given that the City HRL is even broader than the State HRL (Phillips, 66 AD3d at 176), defendant has likewise failed to show that it engaged in an interactive process with plaintiff.
Defendant argues that plaintiff's claim fails because plaintiff could not perform the Kimmel Representative position, with or without a reasonable accommodation. Accordingly, the argument goes, it did not even have to show undue hardship. Defendant, however, is conflating several concepts. First, although a jury may ultimately find that defendant cannot perform the position even with an accommodation, or that to do so would impose an undue hardship, defendant cannot jump to that ultimate conclusion without first engaging in a good faith interactive process with plaintiff (Jacobsen, 22 NY3d at 837-838).
Last, we disagree with defendant's position that it need not restructure the position or modify the work schedule to accommodate plaintiff because it would be inconsistent with the new model. What defendant fails to recognize is that, here, the whole purpose of engaging in an interactive process is to see whether the position or schedule could be modified to accommodate plaintiff. To sanction defendant's position, this Court would in essence be giving carte blanche to employers to create business models that can be used as a subterfuge to discriminate against disabled employees and circumvent the HRLs (Phillips, 66 AD3d at 177 [employer simply cannot abrogate the requirements of the HRLs by carving out a category of employees who are not subject to an interactive process]). Regardless of the model or position, the HRLs require an interactive process, conducted in good faith, to ascertain whether an employee can be accommodated (id.).
The motion court properly granted defendant's motion to dismiss plaintiff's claims for age discrimination (see Rollins v Fencers Club, Inc., 128 AD3d 401, 401 [1st Dept 2015]). The fact that plaintiff was replaced by a person nearly 30 years younger than her suffices to support an inference that her termination was motivated by age-based animus (see Melman v Montefiore Med. Ctr., 98 AD3d 107, 114-115 & n 2 [1st Dept 2012]). However, plaintiff offers no other record evidence of age-related animus. The simple fact that plaintiff was replaced by someone younger than her, standing alone, does not suffice to establish a prima facie case and to rebut defendant's proffered legitimate reason for her termination, as pretextual (see Suri v Grey Global Group, Inc., 164 AD3d 108, 111 & n 1 [1st Dept 2018], appeal dismissed 32 NY3d 1138 [2019]; Hudson v Merril Lynch & Co., Inc., 138 AD3d 511, 517 [1st Dept 2016], lv denied 28 NY3d 902 [2016]).
Accordingly, the order of the Supreme Court, Bronx County (Lizbeth González, J.), entered September 21, 2016, which granted defendant's motion for summary judgment dismissing the complaint to the extent of dismissing plaintiff's claims for age discrimination under the New York State and City Human Rights Laws (State and City HRLs) and denied the motion to the extent it sought dismissal of plaintiff's claims for disability discrimination under the State and City HRLs, should be affirmed, without costs.
All concur.
Order, Supreme Court, Bronx County (Lizbeth González, J.), entered September 21, [*5]2016, affirmed, without costs.
Opinion by Acosta, P.J. All concur.
Acosta, P.J., Richter, Manzanet-Daniels, Gische, Kapnick, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JUNE 18, 2020
CLERK



Footnotes

Footnote 1:The State HRL was recently amended, to include section 300, which states, in relevant part, "The provisions of this article shall be construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws, including those laws with provisions worded comparably to the provisions of this article, have been so construed" (Executive Law § 300 [effective date: August 12, 2019]). This amendment is remarkably similar to the City HRL's Restoration Act (Local Law 85), which states, in relevant part, "The provisions of this [chapter] title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed" (Local Law 85 § 7; see also Williams v New York City Hous. Auth., 61 AD3d 62, 66 [1st Dept 2009], lv denied 13 NY3d 702 [2009]).