**Bing Wu v Wunderkind Corp.**

2024 NY Slip Op 33404(U)

September 26, 2024

Supreme Court, New York County

Docket Number: Index No. 155165/2023

Judge: Judy H. Kim

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

PRESENT:    HON. JUDY H. KIM              PART              04

                                  *Justice*

-------------------------------------------------------------------------X

BING WU,

                      Plaintiff,

             - v -

WUNDERKIND CORPORATION D/B/A WUNDERKIND
TECHNOLOGIES,

                      Defendant.

-------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 155165/2023 |
| MOTION DATE | 06/30/2023 |
| MOTION SEQ. NO. | 001 |

### DECISION + ORDER ON MOTION

The following e-filed documents, listed by NYSCEF document number (Motion 001) 12, 13, 14, 15, 16, 17, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30

were read on this motion to/for                  DISMISS             .

Upon the foregoing documents, defendant's motion to dismiss this action is denied and plaintiff's cross-motion to amend his complaint is granted.

## FACTUAL BACKGROUND

Plaintiff's proposed Second Amended Complaint alleges that plaintiff, a Chinese American man, joined defendant Wunderkind Corporation ("Wunderkind") in August 2013 as an intern (NYSCEF Doc. No. 27 [Second Am. Compl. at ¶¶2, 6]). Between 2013 and 2023, he was repeatedly promoted until he was eventually appointed the Director of Product & Head of Product in 2023 (Id. at ¶7).

In December 2022, Wunderkind's founder and CEO Ryan Urban was replaced by Bill Ingram. Plaintiff alleges that this change in management "created a climate of fear in which employees knew that they could not voice any concern or disapproval about workplace equality or related policies" and "Asian American employees knew that this was doubly true for them, as they

**155165/2023 WU, BING vs. WUNDERKIND CORPORATION D/B/A WUNDERKIND TECHNOLOGIES**
**Motion No. 001**

**Page 1 of 8**

were subject to increased scrutiny, and the slightest imaginary infraction could lead to termination" (Id. at ¶18). In February 2023, plaintiff was giving a presentation at Wunderkind's sales onsite when "members of the management muttered audibly that they were unable to understand plaintiff due to his accent" (Id. at ¶17).

After Urban had left Wunderkind, plaintiff set up a meeting with him "to learn … about overarching strategies for how to improve email messaging" (Id. at ¶19). After plaintiff's manager, Tom Spiegelman, learned of this meeting he instructed plaintiff to cancel the meeting and warned him not to share company information with Urban (Id.). On or about March 8, 2023, plaintiff "facilitated" a Zoom meeting between Urban, defendant's former Vice President of Engineering, Namik Abdulzade, and several Wunderkind employees (Id. at ¶22). Shortly thereafter, "[he] received an email from HR warning him that his employment would be terminated if he continued to involve current employees with ex-leadership, specifically Mr. Urban" (Id. at ¶24). HR also began a baseless investigation into whether plaintiff had shared company information with Urban (Id. at ¶23)

On April 25, 2023, plaintiff met with another former Wunderkind employee, Molly Bruttomesso, who had managed the Customer Success team (Id. at ¶25). On May 1, 2023, defendant's Human Resources Department began another investigation into whether plaintiff had shared company information with Bruttomesso (Id. at ¶26). Plaintiff asserts that he had never shared any company information and that this claim was a pretext for an investigation to harass him (Id.).

In response, plaintiff contacted the Human Resources Department to inquire about filing a complaint "regarding the discrimination he was experiencing" and "booked a call to discuss the matter further the next day" (Id. at ¶27). This call was rescheduled from May 2, 2023 to May 3,

**155165/2023   WU, BING vs. WUNDERKIND CORPORATION D/B/A WUNDERKIND TECHNOLOGIES**
**Motion No. 001**

**Page 2 of 8**

2 of 8

[* 2]

2023 (Id.). On May 3, 2023, plaintiff's manager, Spiegelman, met with plaintiff an hour before plaintiff's scheduled meeting with HR and fired him (Id. at ¶25-28). At that meeting, Spiegelman and the head of defendant's HR department informed plaintiff that the termination was not performance related but due to "a series of bad judgments" by plaintiff (Id. at ¶29). The following week, John Bates, a white male, joined the company to replace plaintiff's "job function" (Id. at ¶30).

Plaintiff asserts claims under Executive Law §296 (the New York State Human Rights Law or "NYSHRL") and Administrative Code §8-107 (the New York City Human Rights Law or "NYCHRL") for: (i) employment discrimination based on his race and national origin; and (ii) retaliation. Defendant now moves, pursuant to CPLR 3211(a)(7), to dismiss the complaint. Plaintiff opposes the motion.

## DISCUSSION

As a threshold matter, plaintiff's motion to amend is granted. Generally, "[l]eave to amend the pleadings shall be freely given absent prejudice or surprise resulting directly from the delay" (Murray v City of New York, 51 AD3d 502, 503 [1st Dept 2008] [internal quotations and citations omitted]). "[P]laintiff need not establish the merit of [his] proposed new allegations but simply show that the proffered amendment is not palpably insufficient or clearly devoid of merit..." (MBIA Ins. Corp. v Greystone & Co. Inc., 74 AD3d 499, 500 [1st Dept 2010] [internal citations omitted]). Here, plaintiff's claims are neither palpably improper nor insufficient as a matter of law and the Court finds no prejudice to defendant since the proposed amendments arise from the same transactions, facts and occurrences alleged in the original complaint (See Castor Petroleum, Ltd. v Petroterminal de Panama, S.A., 90 AD3d 424 [1st Dept 2011]). Accordingly, as defendants' reply papers address the merits of the proposed Second Amended complaint, defendant's motion

**155165/2023  WU, BING vs. WUNDERKIND CORPORATION D/B/A WUNDERKIND TECHNOLOGIES**
**Motion No. 001**

**Page 3 of 8**

[* 3]

3 of 8

to dismiss is treated as addressed to the Second Amended Complaint (See e.g., Ferguson v Sherman Sq. Realty Corp., 30 AD3d 288, 288 [1st Dept 2006]).

In addressing a motion to dismiss pursuant to CPLR 3211(a)(7), the pleading is to be afforded a liberal construction and the court should accept as true the facts alleged in the complaint, accord the pleading the benefit of every reasonable inference, and only determine whether the facts, as alleged, fit within any cognizable legal theory (See Leon v Martinez, 84 NY2d 83 [1994]). Moreover, employment discrimination and retaliation claims under the City and State Human Rights Laws are reviewed under a notice pleading standard, in which a plaintiff "need not plead specific facts establishing a prima facie case ... but need only give fair notice of the nature of the claim and its grounds" (Eustache v Bd. of Educ. of City School Dist. of City of New York, 228 AD3d 482, 483 [1st Dept 2024]; see also Herskowitz v State, 222 AD3d 587, 588 [1st Dept 2023] ["Plaintiffs in retaliation cases are held to a lenient notice pleading standard and are generally afforded deference at the pleading stage"]).

### Race and National Origin Discrimination

That branch of defendant's motion to dismiss plaintiff's race and national origin discrimination claims under the NYSHRL and NYCHRL is denied. To state such a claim, plaintiff must allege that: (1) he is a member of a protected class, (2) he was qualified for the position, (3) he was adversely or differently treated based on his race in a way that disadvantaged him; and (4) that the adverse . . . treatment occurred under circumstances giving rise to an inference of discrimination"[1] (See Hosking v Mem. Sloan-Kettering Cancer Ctr., 186 AD3d 58, 62 [1st Dept

---

[1] In light of the amendment to Executive Law §300 mandating that the NYSHRL be interpreted in, effectively, the same manner as the NYCHRL (See Syeed v Bloomberg L.P., 41 NY3d 446, 451 [2024]), NYSHRL claims asserted after this amendment are properly assessed using the liberal approach employed under the NYCHRL (See e.g., Hunold v City of New York, 216 NYS3d 550 [Sup Ct, NY County 2024]; Cannizzaro v City of New York, 82 Misc 3d 563,

**155165/2023  WU, BING vs. WUNDERKIND CORPORATION D/B/A WUNDERKIND TECHNOLOGIES**
**Motion No. 001**

Page 4 of 8

[* 4]

2020]; see also Harrington v City of New York, 157 AD3d 582 [1st Dept 2018]). "[C]ircumstances that give rise to an inference of discrimination . . . include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus and preferential treatment given to employees outside the protected class" (Brown v New York City Dept. of Educ., 2023 NY Slip Op 30106[U], 22 [Sup Ct, NY County 2023]).

Here, it is undisputed that plaintiff is a member of a protected class, that he was qualified for his position, and that he was on May 3, 2023. Defendant argues only that plaintiff has not alleged that his termination occurred under circumstances permitting an inference of discrimination. The Court disagrees. Plaintiff has satisfied this standard through his allegations that defendant's managers made negative comments about his accent (See Demir v Sandoz Inc., 155 AD3d 464, 466 [1st Dept 2017] [plaintiff alleged sufficient facts to show that she was subjected to adverse employment actions under circumstances giving rise to an inference of discrimination, including, inter alia, that she and other women, including other Muslim women, had been subjected to abusive and derogatory remarks and questions about her accent]), that his position was filled by someone outside of his protected class (See e.g., Ruiz v Armstrong, 207 NYS3d 374 [Sup Ct, Kings County 2024]), and that he was subjected to a pretextual investigation based on false allegations (See Petit v Dept. of Educ. of City of New York, 177 AD3d 402, 403 [1st Dept 2019] [guidance counselor's allegations that school principal falsely accused him of misconduct, subjecting him to an Office of Special Investigations investigation, during which principal falsely accused plaintiff of being a voodoo priest supported denial of motion to dismiss employment discrimination claim]; see also Hunter v Barnes & Noble, Inc, 2023 NY Slip Op

_____

577 [Sup Ct, NY County 2023]; Brown v New York City Dept. of Educ., 2023 NY Slip Op 30106[U] [Sup Ct, NY County 2023]).

**155165/2023  WU, BING vs. WUNDERKIND CORPORATION D/B/A WUNDERKIND TECHNOLOGIES**
**Motion No. 001**

**Page 5 of 8**

30638[U], 6-7 [Sup Ct, NY County 2023] ["Plaintiff states a cause of action for race-based harassment under the NYSHRL by alleging … that he was subjected to a pretextual investigation that relied on defamatory false documents and that he was made ineligible to receive sales commissions"]).

Defendant's argument that it had a legitimate, nondiscriminatory reasons for terminating plaintiff's employment, based upon his repeated communications with various former Wunderkind employees despite instructions not to do so, "presents a potential rebuttal argument to a prima facie case of employment discrimination, which is misplaced at this early procedural juncture" (Petit v Dept. of Educ. of City of New York, 177 AD3d 402, 404 [1st Dept 2019] [internal citations omitted]). Accordingly, that branch of defendants' motion is denied.

*Retaliation*

The branch of defendant's motion to dismiss plaintiff's retaliation claims under NYSHRL and NYCHRL is also denied. To state a claim for retaliation, plaintiff must allege that: (1) [he] engaged in a protected activity; (2) the employer was aware of the activity; (3) the employer acted in a manner reasonably likely to deter plaintiff from engaging in protected activity; and (4) a causal connection existed between the protected activity and the alleged retaliatory action (See e.g., Fletcher v Dakota, Inc., 99 AD3d 43, 51 [1st Dept 2012]). "In this context, protected activity refers to actions taken to protest or oppose statutorily prohibited discrimination" (Thomas v Mintz, 60 Misc 3d 1218(A) [Sup Ct, NY County 2018] [internal citations omitted], affd as mod, 182 AD3d 490 [1st Dept 2020]).

Plaintiff alleges that he engaged in a protected activity when he contacted Wunderkind's Human Resources department to discuss the process of filing a discrimination complaint (See Madrigal v Montefiore Med. Ctr., 191 AD3d 407 [1st Dept 2021] ["Plaintiff engaged in protected

**155165/2023  WU, BING vs. WUNDERKIND CORPORATION D/B/A WUNDERKIND TECHNOLOGIES**
**Motion No. 001**

**Page 6 of 8**

6 of 8

activity by repeatedly complaining to her employer that supervisors were discriminating against her"]; see also Krebaum v Capital One, N.A., 138 AD3d 528, 528 [1st Dept 2016]). His termination the next day is sufficiently close in time to the protected activity to establish a causal connection for pleading purposes (See Herskowitz v State, 222 AD3d 587, 588 [1st Dept 2023]).

To the extent defendant argues that the complaint's allegation that "Plaintiff contacted HR the same day, enquiring about filing a complaint regarding the discrimination he was experiencing, and booked a call to discuss the matter further the next day, May 2, 2023" cannot be read as at least implying that plaintiff informed HR that the complaint he intended to file was about discriminatory conduct, the Court disagrees (Cf. Fruchtman v City of New York, 129 A.D.3d 500, 501 [2015] ["Plaintiff also failed to establish a prima facie case of retaliation. In her complaints to defendants, she made no reference to the fact that she was female and did not otherwise implicate gender; therefore, the complaints did not constitute "protected activity"]).

In light of the foregoing, it is

**ORDERED** that plaintiff's motion to amend his complaint is granted; and it is further

**ORDERED** that proposed Second Amended Complaint in the form submitted with plaintiff's motion (NYSCEF Doc. No. 27) is deemed filed and served; and it is further

**ORDERED** that defendant's motion to dismiss is denied; and it is further

**ORDERED** that, within twenty days from the date of this decision and order, plaintiff shall serve a copy of this decision and order with notice of entry on defendant as well as upon the Clerk of the Court (80 Centre St., Room 308) and the Clerk of the General Clerk's Office (60 Centre St., Room 119); and it is further

**ORDERED** that such service upon the Clerk of the Court and the Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the *Protocol on*

**155165/2023   WU, BING vs. WUNDERKIND CORPORATION D/B/A WUNDERKIND TECHNOLOGIES**
**Motion No. 001**

**Page 7 of 8**

7 of 8

[* 7]

*Courthouse and County Clerk Procedures for Electronically Filed Cases* (accessible at the "E-Filing" page on this court's website at the address www.nycourts.gov/supctmanh); and it is further

**ORDERED** that the parties are to appear for a preliminary conference in Part 4 (80 Centre Street, room 308) on **November 1, 2024 at 10:00 am**.

This constitutes the decision and order of the Court.

| 9/26/2024 | | | HON. JUDY H. KIM |
|-----------|--|--|------------------|
| **DATE** | | | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|------------|-----------------|-------------------------|--|
| | ☐ GRANTED ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**155165/2023   WU, BING vs. WUNDERKIND CORPORATION D/B/A WUNDERKIND TECHNOLOGIES**
**Motion No.  001**

Page 8 of 8

8 of 8