| |
|---|
| **Lettau v 1199 SEIU Natl. Benefit Fund** |
| 2025 NY Slip Op 30007(U) |
| January 2, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 158020/2018 |
| Judge: Arlene P. Bluth |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | | | |
|---|---|---|---|
| **PRESENT:** | **HON. ARLENE P. BLUTH** | **PART** | **14** |
| | *Justice* | | |

---------------------------------------------------------------------X

EDWARD LETTAU

Plaintiff,

- v -

1199 SEIU NATIONAL BENEFIT FUND,

Defendant.

---------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 158020/2018 |
| **MOTION DATE** | 12/20/2024 |
| **MOTION SEQ. NO.** | 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 87, 88, 89

were read on this motion to/for                                    SUMMARY JUDGMENT                              .

Defendant's motion for summary judgment is granted.

**Background**

Defendant is a multi-employer trust fund and plaintiff used to work for defendant as a telephone representative; his job was to take calls from members and answer their questions. He claims that was fired in December 2016 because of his disabilities. Plaintiff alleges that he provided defendant with documentation from medical providers but defendant still fired him for missing too much work.

Defendant, on the other hand, claims it did not discriminate against plaintiff and that his position as a telephone representative required timely and regular attendance. Defendant asserts that plaintiff was frequently absent during the entire time he was employed by defendant. In his last year of employment, defendant asserts that plaintiff was absent 68 times, which represented more than 25% of all workdays. Defendant contends that there was no documentation provided

[* 1]

to show that his purported disabilities required work restrictions. Defendant claims it allowed plaintiff as much leniency as it could, but eventually decided to fire him.

Previously, this Court granted defendant's motion for summary judgment. However, the Appellate Division, First Department reversed, finding that the motion "should have been denied because the record raises an issue of fact as to whether defendant fulfilled its obligation to engage in a cooperative dialogue with plaintiff, a disabled employee, to determine whether a reasonable accommodation of his disability could be devised" (*Lettau v 1199 SEIU Natl. Benefit Fund,* 200 AD3d 462, 155 NYS3d 70 (Mem) [1st Dept 2021]).

Now, after discovery has been completed, defendant moves again for summary judgment. It insists that the record indisputably demonstrates that defendant engaged in a cooperative dialogue for years prior to the termination of plaintiff's employment. Defendant insists that many conversations and meetings took place to address plaintiff's continued absences from work and that plaintiff simply refused to meaningfully participate in these discussions. Defendant contends that plaintiff only demanded that defendant take into account his issues after he was fired.

Defendant explains that plaintiff started working for defendant as a telephone representative.  It insists that a person in this role answers calls from defendant's members about eligibility, claims and benefits. Defendant observes that the main requirement of a telephone representative is to answer telephone calls.  It argues that such a requirement necessarily entails physical presence at the office and punctuality. Defendant points to an attendance and lateness policy (NYSCEF Doc. No. 56), which contains progressive discipline for employees who are late or absent (or both).

Defendant maintains that plaintiff received an oral warning for excessive absences in 2005, just a year after he started working for defendant. It points out that plaintiff later received

[* 2]

an oral warning in January 2007 followed by four written warnings throughout 2007. Defendant contends that plaintiff should have been fired at this point but instead received a suspension for these excessive absences. Unfortunately, plaintiff's absences continued throughout the next few years and he eventually received another suspension.

Defendant argues that because plaintiff's physical ailments required frequent bathroom visits, he received a "reduced-call volume accommodation." That is, defendant claims it reduced the number of phone calls plaintiff had to field despite the fact that answering the phone is an essential part of his job. Defendant also claims it moved plaintiff's desk closer to the bathroom.

At the deposition of defendant's manager of employment relations, she (Ms. Jessica Bustamante, now Ms. Torres) explained that there were many conversations about providing alternatives to his termination (NYSCEF Doc. No. 62 at 33). Ms. Bustamante observes that defendant hoped to give plaintiff enough of a grace period so that he could accumulate the requisite hours for FMLA leave but that he simply was absent too much (*id*.).

She observed that plaintiff had 26 unexcused absences and that defendant excused 16 of these absences, even though only 2 unexcused absences were necessary for the imposition of progressive discipline under the attendance policy (*id*. at 34). Ms. Bustamante emphasized that the absences used to justify plaintiff's termination were not from the grace period (*id*. at 36).

Defendant contends that the defendant's manager of human resources for benefits discussed with plaintiff about taking a disability leave in April 2016 but that plaintiff did not think his doctors would "put him out on disability" (NYSCEF Doc. No. 70 [email chain]). Defendant also points to a meeting it had with plaintiff in April 2016 at which time off options, disability leave, FMLA leave and doctor's appointment scheduling were discussed. However, according to defendant, plaintiff did not engage with any of these options and instead he

continued to incur unexcused absences throughout 2016. Defendant argues that plaintiff never claimed that he was unable to work due to a medical condition or ask for these absences to be waived. Defendant then suspended plaintiff for three days in July 2016. It contends that after more discussions, plaintiff called out another five times throughout August, September and November 2016 before defendant finally terminated plaintiff's employment on December 6, 2016.

In opposition, plaintiff claims he suffered from many physical ailments throughout his time working for defendant including diabetes, gastrointestinal problems and severe anxiety. He claims these issues did not prevent him from doing his job but that they flared up from time to time. Plaintiff details that he struggled to qualify for FMLA leave which required him to work 1250 hours in the previous 12-month period. He admits that he did not have FMLA protection in 2016 and that he began to receive progressive discipline for his continuous absences.

Plaintiff claims that the instant motion is barred under the law of the case doctrine as defendant cannot make multiple summary judgment motions. He claims that his disability claim, brought under the New York City Human Rights Law ("NYCHRL"), requires the Court to deny the instant motion even if the Court were to consider the instant motion on the merits. Plaintiff argues that defendant did not engage in any cooperative dialogue whatsoever and that plaintiff terminated him when he was just a few hours shy of qualify for FMLA protections.

Plaintiff claims that the "clean slate" he received was not a cooperative dialogue and that his lifelong chronic conditions were not going to resolve after a temporary leave. Plaintiff also insists that the grace period he received after his July 2016 suspension is utterly confusing and, in any event, he denies he received a grace period of any kind. He contends that despite defendant's arguments to the contrary, providing him an accommodation would not constitute an

undue burden. He points to the affidavit of his purported expert (NYSCEF Doc. No. 83) who argues that "Accommodating an operator with a chronic illness that causes unscheduled absences poses no particular challenge for a call center."

In reply, defendant emphasizes that its attendance policy does not violate the NYCHRL. In fact, it claims that the policy is liberal and collectively-bargained, and allows many absences. Defendant argues that this motion is only about whether or not it engaged in a cooperative dialogue with plaintiff and that plaintiff's opposition does not dispute that there were many discussions between the parties. It argues that plaintiff claims, without any caselaw support, that defendant was supposed to find a way to keep plaintiff employed despite his inability to satisfy the demands of the attendance policy.

Defendant emphasizes that plaintiff refused to apply for even short-term disability leave despite defendant raising this issue on numerous occasions. It points out that plaintiff never submitted medical documentation to support his assertions that his absences were caused by his disabilities. Defendant argues that the doctor's notes plaintiff provided only excused his absences but, critically, they did not indicate any chronic conditions that would necessitate ongoing work restrictions.

**Discussion**

As an initial matter, the Court declines to deny the instant motion on the ground that it constitutes an impermissible successive summary judgment motion. "Exceptions are permitted to the rule against successive summary judgment motions not only when evidence has been newly discovered since the prior motion . . . , but also when 'other sufficient cause' for the subsequent motion exists" (*Varsity Tr., Inc. v Bd. of Educ. of City of New York*, 300 AD2d 38, 39, 752 NYS2d 603 [1st Dept 2002]). Here, the prior summary judgment motion was filed prior to

discovery and before any depositions were held. This is not a situation in which movant made a successive motion and cited evidence that was clearly available when it made the prior motion (*c.f. Brown Harris Stevens Westhampton LLC v Gerber,* 107 AD3d 526, 968 NYS2d 32 [1st Dept 2013]).

In this Court's view, the Appellate Division, First Department's decision requires this Court to consider the parties' arguments concerning cooperative dialogue.[1] "The City HRL makes it an unlawful discriminatory practice for an employer ... to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation" (*Marsteller v City of New York*, 217 AD3d 543, 545 [1st Dept 2023], *appeal dismissed, lv to appeal denied*, 41 NY3d 960 [2024] [quotations and citation omitted]).

The rule cited above seems to require, as an initial finding, that plaintiff requested an accommodation. In plaintiff's opposition, he argues that he need not request an accommodation because defendant knew of his disabilities and that, in any event, he did request one. The only citation he includes for the proposition that he requested an accommodation was in his attorney's affirmation (NYSCEF Doc. No. 85 at 17). The attorney's affirmation simply cites to an affidavit from Ms. Bustamante (now Ms. Torres, defendant's witness) in which she states that plaintiff "never requested or suggested any accommodation from the Fund other than that his excessive absences be overlooked" (NYSCEF Doc. No. 80, ¶ 19). It is unclear to this Court how this supports plaintiff's claim that he requested an accommodation or that defendant refused to engage in a cooperative dialogue. Demanding that his absences be wholly overlooked is not the same as documenting medical issues that prevented him from fulfilling his job responsibilities.

---

[1] The Court makes no findings concerning defendant's arguments about the alleged retroactive effect of various human rights law statutes or about issues raised with the First Department's decision. It is not this Court's role to opine whether the appellate court's opinion is correct.

**158020/2018   LETTAU, EDWARD vs. 1199 SEIU NATIONAL BENEFIT**
**Motion No.  003**

**Page 6 of 9**

[* 6]

Of course, even if the Court could somehow find that defendant knew the full extent of plaintiff's conditions and that he had requested an accommodation, the record submitted on this motion is filled with examples of a cooperative dialogue. The record shows that defendant gave plaintiff many, many chances to balance his job responsibilities with his medical issues. There is no dispute that defendant could have fired plaintiff much earlier than it did. In fact, the grievance response (plaintiff's union grieved his termination) noted that:

> "The Grievant has been disciplined for both excessive absence and lateness since 2005. Throughout this time, His Leadership team did advise him of FMLA so he would be able to address his health concerns as needed. The Grievant has been aware of the Family and Medical Leave Policy LA 3.0, which states that eligible employees must have worked at the Fund for at least twelve months and for at least 1,250 hours or as specified by law. From 2007-2016, the Grievant's Department leadership allowed grace periods, which offered the opportunity for the Grievant to obtain the hours necessary in order to be eligible for FMLA. Leadership also continuously worked with his excessive absence and lateness history due to his circumstances. However, it is imperative that the Fund hold all employees to the Attendance Policy as appropriate" (NYSCEF Doc. No. 61).

This is not a situation in which an employer made little or no effort to work with an employee suffering from a disability (*c.f. Hosking v Mem. Sloan-Kettering Cancer Ctr.,* 186 AD3d 58, 65 [1st Dept 2020] [finding an issue of fact concerning a cooperative dialogue under the NYCHRL where the employer "essentially told plaintiff that she did not fit within the new model and that she should apply for another position within the hospital"]; *see also Gordon v Consol. Edison Inc.,* 190 AD3d 639 [1st Dept 2021] [finding an issue of fact where the employer refused to explore any accommodations]). The defendant here refrained from imposing the strictest application of its attendance policy for years in favor of working with plaintiff to address his repeated absences. Defendant practically begged plaintiff to work with it; however, the record shows that plaintiff refused to meaningfully engage in the cooperative dialogue initiated by defendant—he did not submit a cogent request for an accommodation that detailed his

medical conditions nor did he explain why he declined to pursue even a short term medical leave proposed by defendant.

Moreover, the Court agrees with defendant's characterization of plaintiff's purported "accommodation." It seems that plaintiff's preferred accommodation was that he wanted all of his absences to be ignored simply by pointing towards his medical issues. And while his doctors purportedly excused his absences, he never had his doctors specifically document the need for any type of accommodation. In this Court's view, that is not a reasonable suggestion. It would require defendant to employ plaintiff as a telephone representative (whose essential function is to remain available to answer telephone calls from members) where he could come in late and call out sick whenever he wishes. Such an accommodation, if it could be characterized as such, would place an undue burden on defendant who would be forced to constantly rearrange how it staffs its telephone representatives. Plaintiff's insistence that his absences had no effect on defendant strains credulity.

**Summary**

As this Court noted in the prior decision, there is little doubt that plaintiff suffers from debilitating medical issues. However, defendant is entitled to enforce its attendance policy to ensure that its members are adequately served and so that all of its employees are held to similar standards. Here, defendant overlooked many absences for nearly a decade and tried to find a solution so that plaintiff could both satisfy his job responsibilities and address his medical concerns. Instead of engaging in these options, plaintiff continued to call out sick again and again and, eventually, defendant could no longer overlook these excessive absences.

Accordingly, it is hereby

ORDERED that the defendant's motion for summary judgment is granted, the case is dismissed and the Clerk is directed to enter judgment accordingly along with costs and disbursements upon presentation of proper papers therefor.

**1/2/2025**
**DATE**

| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|
| | X | GRANTED | DENIED | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 9]