**Moye v Mount Sinai Hosp.**

2025 NY Slip Op 31535(U)

April 29, 2025

Supreme Court, New York County

Docket Number: Index No. 156584/2021

Judge: Richard G. Latin

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **HON. RICHARD G. LATIN**            PART            **46M**

*Justice*

-------------------------------------------------------------------------------X

RONALD MOYE, CHRISTOPHER SHAW, BRIAN JONES,

Plaintiff,

- v -

THE MOUNT SINAI HOSPITAL, MOUNT SINAI HEALTH
SYSTEM, INC.,JEFFREY COHEN, DAVID GIRDUSKY

Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 156584/2021 |
| **MOTION DATE** | 02/27/2024 |
| **MOTION SEQ. NO.** | 003 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 003) 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187

were read on this motion to/for                JUDGMENT - SUMMARY               .

Plaintiffs Ronald Moye, Christopher Shaw, and Brian Jones filed a complaint on July 13, 2021 against defendants The Mount Sinai Hospital, Mount Sinai Health System, Inc., Jeffery Cohen, and David Girdusky alleging that while employed at the hospital in the Building Services Department (the "Department"), they were selectively targeted to pass a fit test to wear N-95 masks. They allege that they were targeted for such test due to their religious beliefs, which requires them to maintain a beard. Plaintiffs allege that they were selected for the test, even though their employment positions did not routinely expose them to situations in which a mask was necessary, and when alternative personal protective equipment was available.

In the complaint, plaintiffs allege religious discrimination under the New York State Human Rights Law, religious discrimination under the New York City Human Rights Law, and failure to engage in a cooperative dialogue under the New York City Human Rights Law.

An amended complaint was filed on July 7, 2022. Plaintiffs allege causes of action for religious discrimination under the New York State Human Rights Law, for religious discrimination under the New York City Human Rights Law, failure to engage in a cooperative dialogue under the New York City Human Rights Law, and disparate impact under the New York City Human Rights Law.

In motion sequence 003, defendants The Mount Sinai Hospital (named herein as The Mount Sinai Hospital, Mount Sinai Health System, Inc.), Cohen, and Girdusky, move, pursuant to CPLR 3212, for an order granting summary judgment, dismissing the complaint.

Plaintiffs cross-move, pursuant to CPLR 3212, on the parts of the first and second causes of action alleging a failure to provide a religious accommodation, as well as the third cause of action for failure to engage in a cooperative dialogue.

**Defendants Factual Allegations**

Moye, Jones and Shaw were employees of Mount Sinai Hospital located in New York County, New York. Moye began working at Mount Sinai on April 25, 2016, as a part-time Support Associate in the Department. Jones began working at Mount Sinai on May 2, 2016, as a part-time Support Associate in the Department. Shaw began working at Mount Sinai on June 20, 2016 as a part-time "A2" worker in the Department. During their employment, plaintiffs were members of 1199SEIU United Healthcare Workers East, a union.

Support Associates responsibilities at the hospital included cleaning patient rooms and sanitizing staff areas, while A2's responsibilities included stripping and waxing the floors when there are no patients in the room and washing and varnishing the floors when there are patients present. A2's also performed Support Associate services as needed. Defendants maintain that during the COVID-19 pandemic, it was possible for Support Associates and A2's, who were

[* 2]

responsible for cleaning non-patient rooms and areas, to be requested, at any time, to clean those areas.

Dr. Bernard Camins is the Medical Director for Infection Prevention for the Mount Sinai Health System, Inc. Girdusky is the Senior Director of Support Services at Mount Sinai and has responsibilities over the Department.

Defendants maintain that after the initial outbreak of COVID-19, Mount Sinai continued to treat a large number of COVID-19 positive patients. Between December 2020 to February 2021, during a surge of the coronavirus, approximately fifty percent of the patients were COVID-19 positive. N-95 protective masks were being utilized. In order for the mask to work properly, an individual must be fit tested. Mount Sinai took steps to ensure that all Support Associates and A2's passed a N-95 fit test to protect themselves, patients, patients' families, visitors and others. Defendants maintain that pursuant to Centers for Disease Control and Prevention guidance and Occupational Safety and Health Administration (OSHA) regulations, an individual cannot achieve a proper seal of an N-95 mask with a beard.

In late January of 2021, plaintiffs, who all had beards, were notified that they had to be clean shaven in order to pass an N-95 mask fit test. On February 13, 2021, plaintiffs were sent home and instructed to report back to work shaved in order to pass a fit test the next day. Plaintiffs refused to shave and alerted Mount Sinai that they were unable to shave because of their religious belief, specifically that they are Muslim.

Mount Sinai requested that plaintiffs obtain documentation regarding their beard requirement from their clergy. Moye and Shaw provided Mount Sinai with unsigned letters from the Islamic Cultural Center of New York, dated February 23, 2021 and February 25, 2021. The letter stated that men are strongly encouraged to grow a beard in Islam. Shaw testified that

**156584/2021  MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**          **Page 3 of 23**
  **Motion No.  003**

3 of 23

maintaining a beard was a preference, but not a requirement, of the Muslim religion. Jones submitted an unsigned letter dated February 21, 2021, from Khalid Diallo of Masjid At-Taqwa, which stated that Jones is required to maintain a beard because of his religious practice.

In response to plaintiffs submitted letters regarding their religion and maintaining of beards, Mount Sinai discussed how the hospital could make an accommodation. As there was a COVID-19 surge at this time and between 400 to 600 employees would call out sick daily, a Department employee may have been asked to clean a patient-care area and a risk of COVID-19 infection would arise if plaintiffs were unable to wear an N-95 mask properly. Plaintiffs were not the only employees in the Department who sought a religious accommodation for the fit test.

Defendants maintain that discussions were held regarding whether it was possible to provide the employees in the Department who presented a religious objection with an alternative personal protective equipment of a Powered Air Purifying Respirator (PAPR). However, it was determined that PAPR's would not be efficient for Support Associates and A2's to utilize and that the hospital also did not have enough PAPR's for all who needed them.

Gisely Diaz, Assistant Vice President of Talent Acquisition and Recruitment, looked to find plaintiffs new positions in which they were not required to wear an N-95 mask and could maintain their beards, however, plaintiffs could only be placed in 1199 represented positions. Mount Sinai was able to offer plaintiffs and the other employees seeking a religious accommodation approved 1199 vacancies in other departments which would not require them to pass an N-95 fit test and allow them to maintain their beards, while being paid at their same or nearly the same hourly rate.

While the Recruitment Department initially had 19 potential job opportunities for employees whom requested a religious accommodation, many positions were not amenable

156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL
Motion No.  003

Page 4 of 23

[* 4]

because they required a mask be worn. However, approximately five or six positions were identified as approved vacancies that did not require masks and were offered to plaintiffs and the employees who requested a religious accommodation. The transfer positions, which were offered based upon seniority, included Lab Accessioning Associate, Laboratory Helper, Food Preparer, and Laundry Worker.

Moye and Shaw did not accept an alternative position and, as a result, Mount Sinai considered them to have resigned, effective March 1, 2021. Jones accepted a position in the Hospital's kitchen as a Food Preparer, in which he was able to maintain his beard. The day shift had an hourly rate of $21.1493 and his hourly rate in the Department was $21.1492. He began working in that position during the week of March 7, 2021. Jones failed to show up to work on August 16, 2021, did not contact his supervisor, and did not return to work or contact his supervisor thereafter. He was terminated for job abandonment, effective September 16, 2021. Jones earned more in the Food Preparer position than he had as a Support Associate.

Jones stated that everyone was told to shave and that he did not know of any employees in the Department who did not have to shave. Moye testified that all employees in the Department, including non-Muslims, were required to shave and that he was unaware of any Jewish employees who did not have to shave. Shaw claims that a Jewish employee named "Arturo" had a beard, but did not have to shave. Defendants maintain that Arturo Navarro shaved his beard, passed fit tests, and received the appropriate certificates in April 2020 and again in May 2021. Further, defendants maintain that plaintiffs testified that no one at Mount Sinai made any comments to them or anyone else about their religion.

**156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**               **Page 5 of 23**
   **Motion No.  003**

5 of 23

**Plaintiffs' Factual Allegations**

Plaintiffs maintain that some of Support Associates duties include cleaning patient rooms and sanitizing staff areas and that patients were not always present, nor were confirmed or suspected of having COVID-19. Plaintiffs maintains that an N-95 mask was not needed to enter a COVID-19 patient's room if the employee waited 30 minutes after a patient vacated the room. N-95 masks were available in every unit but were only for the COVID-19 rooms.

Plaintiffs maintain that keeping a beard is a sincerely held practice for their religion. Plaintiffs worked throughout the pandemic in 2020 without having to shave or wear an N-95 mask. The number of COVID-19 patients varied widely during the pandemic and the plaintiffs worked without shaving during the period which had the largest number of hospitalizations. As of May 29, 2020, Mount Sinai Hospital was down to about 60 COVID-19 patients. In early 2021, the number of beds utilized for COVID-19 patients was under 300 compared to 900 which was earlier in the pandemic. As of August 2, 2020, the number of beds utilized for COVID-19 patients was down to under 50.

There are numerous non-patient outpatient areas within the Mount Sinai Health System and there is no evidence that employees in these buildings were asked to go to another building that had COVID-19 cases. Defendants did not know where plaintiffs worked specifically or whether they had to clean COVID-19 patient rooms or units. There was no undue hardship to not require plaintiffs to clean COVID-19 patient rooms or units.

Plaintiffs, who had beards, were notified that they had to be clean shaven in order to pass an N-95 fit test. On February 13, 2021, plaintiffs were sent home, suspended, threatened with termination, and instructed to report back to work shaved and able to pass a fit test the next day. Mount Sinai was aware that plaintiffs were Muslim and that they objected to shaving for religious

**156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**                    **Page 6 of 23**
  **Motion No.  003**

6 of 23

[* 6]

reasons as of February 1, 2021, or earlier, yet plaintiffs were sent home repeatedly and suspended before they were asked to provide documentation.

Plaintiffs maintain that Cohen made repeated statements suggesting that he did not believe plaintiffs' religious practices were sincerely held. There was also not a discussion about the ways in which plaintiffs could be accommodated. Rather, Cohen announced that employees who had a religious objection to shaving would be linked with the recruitment division to look for other position, but that they were not guaranteed a job. Defendants never considered making an accommodation within the Department for the handful of employees, including plaintiffs who had a religious objection to shaving.

When asked if he knew how many employees within the Department needed a protective device because they had a religious objection to shaving, Girdusky testified that he did not know and he also testified that they did not have enough protective devices for all staff members. Dr. Camins, testified that he had no involvement in any discussions about not reassigning employees who had a religious objection.

Plaintiffs maintain that Mount Sinai was unable to accommodate plaintiffs in their positions within the Department and that plaintiffs could have been offered a non-union position under the NYCHRL. There is evidence to support that Supports Associates and A2's at other Mount Sinai Health Systems locations were not required to shave.

Moye and Shaw did not accept an alternative position and, as a result, they were considered to have resigned from their positions, effective March 1, 2021. Jones accepted a position in the kitchen as a Food Preparer. The position was not comparable to his position in the Department as he worked in the back of a kitchen cleaning utensils mostly by himself. Jones was not given a choice for different positions.

**156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**          **Page 7 of 23**
  **Motion No.  003**

7 of 23

## **DISCUSSION**

### **Summary Judgment Standard**

A party moving for summary judgment "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp*., 68 NY2d 320, 324 [1986]). The "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp*., 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]). If the moving party has met this prima facie burden, the non-moving party must furnish evidence in admissible form sufficient to raise a material issue of fact *(Alvarez*, 68 NY2d at 324).

### **Religious Discrimination**

The New York State Human Rights Law (NYSHRL) provides that "[i]t shall be an unlawful discriminatory practice . . . [f]or an employer . . . because of an individual's . . . creed . . . to discharge from employment such individual . . ." (Executive Law § 296 [1] [a]). It further states that "[i]t shall be an unlawful discriminatory practice for any employer. . . to impose upon a person as a condition of obtaining or retaining employment . . . any terms or conditions that would require such person to violate or forego a sincerely held practice of her or her religion . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's . . . sincerely held religious observance or practice without undue hardship on the conduct of the employer's business" (*id*., § 296 [10] [a]).

The Court of Appeals has held that "[t]he standards for recovery under the [NYSHRL] are the same as the federal standards under [T]itle VII of the Civil Rights Act of 1964" (see *Forrest v Jewish Guild for the Blind,* 3 NY3d 295, 330 n 3 [2004], *citing Mittl v New York State Div. of Human Rights*, 100 NY2d 326 [2003]). Therefore, "[b]ecause both the Human Rights Law and

**156584/2021 MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**        **Page 8 of 23**
**Motion No. 003**

8 of 23

[T]itle VII address the same type of discrimination, afford victims similar forms of redress, are textually similar and ultimately employ the same standards of recovery, federal case law in this area also proves helpful . . ." (*id., citing Matter of Aurecchione v New York State Div. of Human Rights*, 98 NY2d 21, 26 [2002]).

NYSHRL claims are analyzed under the burden shifting framework articulated in *McDonnell Douglas Corp. v Green* (411 US 792 [1973]) (*Melman v Montefiore Med. Ctr*., 98 AD3d 107, 112 [1st Dept 2012]). Under the *McDonnell Douglas* approach, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by demonstrating that the plaintiff is a member of a protected class, was qualified for the position, and suffered an adverse employment under circumstances that give rise to an inference of discrimination (*Hamburg v New York Univ. Sch. of Medicine*, 155 AD3d 66, 73-74 [1st Dept 2017]).

If the plaintiff meets this minimal burden, the defendant must "come forward with evidence of 'legitimate, independent, and nondiscriminatory reasons to support its employment decision'" (*id*. [citation omitted]). If the defendant meets its burden, then the plaintiff must show that the proffered explanation is "a false pretext masking discriminatory intent" (*id.* at 76; *see also DeFreitas v Bronx Lebanon Hosp. Ctr*., 168 AD3d 541, 541 [1st Dept 2019] [the stated reason "is false or unworthy of belief and that more likely than not their age was the real reason"]). Thus, a defendant moving for summary judgment on an New York State Human Rights Law claim "'must demonstrate either plaintiff's failure to establish every element of intentional discrimination, or, having offered legitimate, nondiscriminatory reasons for [its] challenged actions, the absence of a material issue of fact as to whether [its] explanations were pretextual'" (*Shapiro v State of New York*, 217 AD3d 700, 701 [2d Dept 2023] [citation omitted]).

[* 9]

NYCHRL claims are evaluated under *McDonnell Douglas* as well as the mixed-motive framework (*Melman*, 98 AD3d at 113). "Under the 'mixed-motive' framework, 'the question on summary judgment is whether there exist triable issues of fact that discrimination was one of the motivating factors for the defendant's conduct'" (*Hudson v Merrill Lynch & Co., Inc.*, 138 AD3d 511, 514 [1st Dept 2016], lv denied 28 NY3d 902 [2016], *quoting Williams v New York City Hous. Auth.*, 61 AD3d 62, 78 n 27 [1st Dept 2009]).

A defendant moving for summary judgment on an NYCHRL claim must demonstrate that "no jury could find defendant liable under any of the evidentiary routes: under the *McDonnell Douglas* test, or as one of a number of mixed motives, by direct or circumstantial evidence" (*Bennett v Health Mgt. Sys., Inc.*, 92 AD3d 29, 41 [1st Dept 2011], lv denied 18 NY3d 811 [2012]). To defeat the motion, the plaintiff must furnish evidence showing that the defendant's reason was false or that the defendant was motivated, at least in part, by discrimination (*Hamburg*, 155 AD3d at 73; *see also Bond v New York Health & Hosps. Corp.*, 215 AD3d 469, 470 [1st Dept 2023]; *Bennett*, 92 AD3d at 45 [the plaintiff must provide "some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete"]). "A plaintiff's 'feelings and perceptions of being discriminated against are not evidence of discrimination'" (*Basso v Earthlink, Inc.*, 157 AD3d 428, 430 [1st Dept 2018] [citation omitted]).

Defendants argue that summary judgment must be granted in their favor because there was a legitimate, non-discriminatory reason for the mask fit test policy and its enforcement, specifically to protect the health of Mount Sinai employees, patients, family members of patients, and building visitors during a public health emergency. Defendants argue that there is no evidence that religious discrimination played any role in the fit test policy.

156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL           Page 10 of 23
  Motion No.  003

10 of 23

Defendants contend that pursuant to the testimony of plaintiffs, all employees in the Department were subject to the fit test rule. Defendants contend that Jones and Moye testified that everyone was told to shave and that they did not know of any employees in the Department who did not have to shave. Defendants contend that while Shaw testified as to a non-Muslim employee who allegedly was permitted to maintain a beard and continue working, this allegation is false because the submitted documentary evidence shows that the employee, who is Jewish, shaved his beard, passed fit tests, and received the appropriate certificates in April 2020 and May 2021 (*See* NYSCEF DOC. NO. 118-120).

Defendants argue that because there is no evidence that non-Muslim employees in the Department were not required to pass a fit test and shave their beards, there is no evidence of religious discrimination. Defendants argue that in any event, employees outside of the Department in different positions and supervisors are not similarly situated to plaintiffs and their alleged treatment cannot provide evidence of discrimination.

Here, the court finds that the defendants have come forward with evidence of legitimate, independent, and nondiscriminatory reasons to support its directive for employees to utilize a fit test for masks. Specifically, due to the COVID-19 pandemic and the health directives, all employees were to utilize N-95 masks and the fit test was to ensure that the masks were fitting correctly in order to lessen the spread of the COVID-19 virus within the hospital system. The test was for all employees in the Department, regardless of their religion.

Defendants cite to provisions from the United States Department of Labor's Division of Occupational Safety and Health Administration (OSHA) regarding personal protective equipment as well as the Center for Disease Control and Prevention guidelines for facial hairstyles and filtering facepiece respirators.

Defendants also submit an affirmation from Dr. Bernard Camins, M.D., Medical Director

for Infection Prevention from Mount Sinai Health Systems, Inc., dated February 21, 2024, which

states that:

> "In the fall/winter of 2020, Mount Sinai had a greater supply of N-95 masks available and more data was available showing that COVID-19 was transmissible via aerosol particles. As a result, Mount Sinai changed its N-95 policy to state that if an employee was going to be within six-feet of a patient who was COVID-19 positive or suspected of having COVID-19, the employee was required to wear a N-95 mask. As a result, Mount Sinai's N-95 policy at that point covered any employee who walked into a patient room, including employees in the Department."
>
> \*\*\*
>
> "In early 2021, COVID-positive patients were spread throughout all the units at Mount Sinai. While some patients who were admitted for COVID stayed in a COVID unit, patients who were COVID-positive, but were admitted for reasons unrelated to COVID, stayed in the unit related to the reason why they were admitted to the hospital. To list only a few examples, a pregnant woman with COVID would be in the Labor and Delivery Unit and a child with COVID would be in the Pediatric Unit. In addition, every subspecialty of surgery has a different floor and a COVID-positive patient post-surgery would stay on their corresponding surgical specialty floor. In each of those examples, the COVID-positive patient would be in a private room or cohorted only with another COVID-positive patient. Thus, COVID-positive patients were spread throughout the hospital."

(NYSCEF DOC. NO. 183).

Defendants also reference the testimony of Girdusky who testified that due to the pandemic

"we needed everybody to be clean shaven to be fit tested for an N95 mask so that they could protect

themselves from COVID" (NYSCEF DOC. NO. 102, at 38-39). Dr. Camins further testified that

it would be against OSHA regulations to fit test someone with a beard (NYSCEF DOC. NO. 105,

at 33). He testified that requiring N-95 masks does not take into account religious beliefs and that

"not everybody was vaccinated at this time. There was still a really high risk for someone to have

**156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**                    **Page 12 of 23**
  **Motion No.  003**

[* 12]

12 of 23

a bad outcome from COVID, our goal was to prevent people to get, to actually be protected" (NYSCEF DOC. NO. 105, 38-39).

While plaintiff points to statements of Cohen which they allege minimized their religious practices regarding the accommodation process, the actual fit test protocols and requirement to shave were not a result of such statements, but was the result of a directive made to ensure the health of patients and staff. Plaintiffs fail to demonstrate that the reasoning for the directive was false and not due to the possible transmission of the COVID-19 virus or that the defendant was motivated, at least in part, by discrimination.

Therefore, because defendants have come forward with evidence of legitimate, independent, and nondiscriminatory reasons to support its employment decision to enforce the fit test policy, specifically to protect the health of its patients, employees, and outside visitors and because plaintiff had failed to show that the proffered explanation is a false pretext masking discriminatory intent, the claims that the fit test policy itself were discriminatory must fail.

**Disparate Impact**

Defendants contend that while plaintiffs allege that a fit test had a disparate impact and allege a cause of action discussing same, defendants argue that the record is devoid of any evidence regarding the impact of the fit test policy other than on the three plaintiffs. They contend that plaintiffs submit no discovery discussing the statistical data which is required to prove a claim for disparate impact.

In opposition, and in support of their cross motion, plaintiffs contend that Muslims were disproportionally impacted by the fit test requirement, that they do not need an expert to demonstrate that this group of individuals were disproportionally impacted, and that a plaintiff need only show that a policy or practice of a covered entity or a group of policies or practices of a

**156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**          **Page 13 of 23**
  **Motion No.  003**

13 of 23

covered entity results in a disparate impact to the detriment of any group protected by the provisions of the NYCHRL.

Disparate impact claims which are brought pursuant to the NYCHRL are governed by § 8-107 of the New York City Administrative Code. A plaintiff must demonstrate that (1) "a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter"; and (2) "the covered entity fails to plead and prove as an affirmative defense that each such policy or practice bears a significant relationship to a significant business objective of the covered entity or does not contribute to the disparate impact." (N.Y.C. Admin. Code § 8-107 [17] [a] [1]-[2]). "The mere existence of a statistical imbalance between a covered entity's challenged demographic composition and the general population is not alone sufficient to establish a prima facie case of disparate impact violation unless the general population is shown to be the relevant pool for comparison, the imbalance is shown to be statistically significant and there is an identifiable policy or practice or group of policies or practices that allegedly causes the imbalance." (*id*. § 8-107 [17] [b]).

"The specific employment practice responsible for the statistical disparities must be identified and the statistical evidence must be of a kind and degree sufficient to show that the practice in question caused the exclusion . . . ." (*New York State Office of Mental Health, Manhattan Psychiatric Ctr. v New York State Div. of Human Rights*, 223 AD2d 88, 90-91 [3d Dept 1996]; *see also Mandala v NTT Data, Inc*., 975 F3d 202, 209 [2d Cir 2020] [holding that "[t]o nudge a disparate impact claim across the line from conceivable to plausible - and, indeed, to ultimately prove such a claim - plaintiffs typically rely on statistical evidence to show a disparity in outcome between groups"]).

156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL
Motion No.  003

Page 14 of 23

"[A] plaintiff's statistical analysis must [demonstrate] that the disparity is substantial or significant, and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity" (*id.* at 209, [citations and quotations omitted]). The statistical analysis must therefore, at minimum, focus on the disparity between appropriate comparator groups or reveal disparities that are relevant to the claim plaintiff seeks to prove (*id.* at 210).

Here, plaintiffs have failed to demonstrate that defendants fit test policy did not bear a a significant relationship to a business objective. As referenced above, Dr. Camins stated in his affidavit dated February 21, 2024, that in early 2021, "COVID-positive patients were spread throughout all the units at the hospital." (NYSCEF DOC. NO. 183, ¶ 8). Mount Sinai's N-95 mask policy covered any employee who walked into a patient room, including employees in the Department. Due to the continuing cases of COVID-19 and the many employee absences, there was no guarantee an employee would not be assigned to a place where there are patients dealing with COVID-19 (NYSCEF DOC. NO. 105, at 37). With regard to alternative protective devices, the provided testimony of Dr. Camins states that the hospital did attempt to obtain PAPR protective devices and that "[w]e tried very hard to get more PAPR's, even the hoods, but there were really none to be found." (NYSCEF DOC. NO. 105, at 20-21).

Furthermore, plaintiffs do not reference statistical information or cite to any records or documents to support their argument of the impact. They also do not submit any evidence regarding how the policy impacted anyone but the individual plaintiffs (*see Nathe v Weight Watchers Int'l, Inc*, 2010 WL 3000175, 2010 U.S. Dist. LEXIS 76623 at *6 [SDNY July 26, 2010] ["A plaintiff cannot proceed with a disparate impact claim when they fail to present any statistical evidence demonstrating that an employer policy created an adverse impact based on [a protected characteristic]" *see also Robinson v Metro-North Commuter R.R.*, 267 F3d 147, 160 [2d Cir 2001]

**156584/2021    MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**
**Motion No.  003**

**Page 15 of 23**

15 of 23

[* 15]

["statistical proof almost always occupies center stage in a prima facie showing of a disparate impact claim"]).

Therefore, because defendants have met their burden, and as plaintiffs fail to demonstrate otherwise or cite to any information in support of their argument, the part of defendants' motion seeking summary judgment as to plaintiffs claim of a disparate impact must be granted.

## Failure to Accommodate and Cooperative Dialogue

With regards to plaintiffs' claims for failure to accommodate, defendants maintain that plaintiffs were all offered a reasonable accommodation, specifically a transfer to positions in another department in which they could maintain their beards in accordance with their religious beliefs. They argue that the positions offered were 1199 positions that had the same, or nearly the same hourly rate and benefits as the positions plaintiffs held in the Department.

Defendants maintain that Jones's accommodation claim fails because he accepted another position at Mount Sinai, which was comparable to his former position as it was on his preferred morning shift, his salary was similar to what he earned, and he remained a member of 1199. Defendants contend that Moye and Shaw's accommodation claims fail because they rejected the accommodation offered, and that Moye and Shaw's preferred accommodations were unreasonable and would have imposed an undue hardship on Mount Sinai. Defendants contend that Mount Sinai did not have enough PAPR's for everyone, that no additional PAPR's were available for purchase, and that it was not possible for Mount Sinai to place plaintiffs in Support Associate/A2 positions which did not require the cleaning of patient areas. They maintain that there is no evidence that there were any approved 1199 vacancies that did not require the cleaning of non-patient areas because any Support Associate or A2's could have been called upon to clean a patient area at any time, even if they were not ordinarily assigned to clean such areas.

**156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**                **Page 16 of 23**
  **Motion No.  003**

16 of 23

Defendants also argue that plaintiffs cannot establish a claim for failure to engage in a cooperative dialogue because almost immediately after receiving their accommodation requests, defendants engaged in discussions to determine whether it was possible to accommodate plaintiffs in their current positions and had a dialogue with plaintiffs to find a position that suited their needs. They maintain that numerous emails were exchanged between Cohen, Diaz, Gray, and Brown in an effort to accommodate plaintiffs.

In opposition and in support of their cross motion, plaintiffs contend that defendants did not engage in a cooperative dialogue to understand where plaintiffs worked and whether there were alternative accommodations available. Plaintiffs argue that they could have continued working in their current positions with the instruction that they should not be sent to clean COVID-19 patient rooms or could have been instructed to wait 30 minutes to clean a vacated COVID-19 without the needs from an N-95 mask, which was the practice of the housekeepers. They maintain that there were also other areas of Mount Sinai's campus and locations where plaintiffs could have worked and avoided cleaning a COVID-19 patient room.

Plaintiffs argue that the undisputed testimony contradicts defendants claim that they engaged in robust discussions to determine whether it was possible to accommodate plaintiffs in their current positions. Plaintiffs contend that Cohen never spoke to Girdusky or anyone else about keeping housekeepers assigned to non-COVID-19 area, and that Cohen did not know what kind of masks Department employees were wearing or how many Department employees were working in COVID-19 areas and wearing a mask. They contend that Dr. Camins was never part of a discussion about potentially not reassigning employees who needed a religious accommodation to areas of the hospital that did not require a N-95 mask, and that neither Girdusky nor Cohen had knowledge of where plaintiffs worked or whether they required the use of a N-95.

**156584/2021 MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**
**Motion No. 003**

**Page 17 of 23**

17 of 23

[* 17]

Plaintiffs contend that the undisputed evidence shows that over a several week period, they were turned away from work unpaid, suspended, and threatened with termination before any type of accommodation was even considered. Plaintiffs argue that they were offered alternative positions only one time on a take it or leave it basis, and that if they did not accept an alternative position, even if it was a hardship on the employee because of a change in shift, defendants deemed plaintiffs to have resigned. Plaintiffs maintain that defendants could have continued to offer plaintiffs alternative positions as they became available.

Plaintiffs argue that the failure to consider other viable options before terminating plaintiffs or requiring them to transfer to an undesirable position violated the cooperative dialogue requirement. Plaintiffs contend that other potential accommodations like paid or unpaid leave were not considered. Plaintiffs maintain that that they were never provided a written final determination identifying any accommodation granted or denied, as required by the NYCHRL § 8-107 (28) (d).

In order to establish a prima facie case of religious discrimination for failure to accommodate under the NYSHRL, a plaintiff employee must show that "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employer of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement" (*Knight v State Dept. of Pub. Health*, 275 F3d 156, 167 [2d Cir 2001]; *Baker v Home Depot*, 445 F3d 541, 546 [2d Cir 2006]). If the plaintiff establishes a prima facie case, the burden then shifts to defendant employer to show it could not reasonably accommodate the plaintiff's religious beliefs without suffering an undue hardship (*id*). Both the NYSHRL and the NYCHRL define undue hardship to mean "an accommodation requiring significant expense or difficulty (including a significant interference with the safe or efficient operation of the workplace…)" or an

156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL
Motion No. 003

Page 18 of 23

accommodation that "will result in the inability of an employee to perform the essential functions of the position in which he or she is employed." Exec. L. § 296 (10) (d); Admin. Code § 8-107 (3) (b).

The requirement to engage in a cooperative dialogue is precipitated by an employee's need for a religious accommodation (*see Coronado v Weill Cornell Med. Coll.,* 66 Misc 3d 404, 410 [Sup Ct, NY County 2019].

Administrative Code § 8-107 (28) requires defendants to engage in a cooperative dialogue with plaintiff within a reasonable time after her request for an accommodation. "Under both the NYSHRL and NYCHRL the first step in providing a reasonable accommodation is to engage in a good faith interactive process . . . The interactive process continues until, if possible, an accommodation reasonable to the employee and employer is reached . . . Unlike the State HRL where the employer must engage in interactions with the employee revealing at least some deliberation upon the viability of an accommodation, the City HRL clearly requires a more rigorous process." *Hosking v Memorial Sloan-Kettering Cancer Ctr.,* 126 NYS3d 98, 101-102 (1st Dept 2020) (internal citations and quotations omitted).

Here, while defendants contend that numerous communications were exchanged between Cohen, Diaz, Gray, and Brown in an effort to accommodate plaintiffs, defendants submit incomplete transcripts from these witnesses in support of the motion. Due to the many non-submitted pages of the transcripts, it is hard for the court to follow if a reasonable accommodation could not be located and if a cooperative dialogue did in fact take place.

For example, defendants cite to the transcript of Cohen, Vice President of Labor Relations and Human Resources, in its memorandum of law to support the argument that a steady line of communication was taking place to accommodate plaintiffs. However, defendants submit only

156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL
Motion No.  003

Page 19 of 23

pages 26, 27, 46, 160, and 161 of the transcript. Similarly, many pages of the deposition transcript of Gisley Diaz, Director of Talent Acquisition and Retention, are also not included for review by the court. For example, while page 30 through 32 of the transcript discusses accommodations, the transcript is not complete and ends mid-question while discussing efforts made if an individual declines a position. Likewise, only a few pages 11, 12, and 29 are submitted of the transcript of Adekemi Gray, Vice President of 1199SEIU, and only pages 11, 12, 14, 32, 33, and 34 of the transcript of Winona Brown, Contract Administrator of 1199SEIU, are submitted, with the transcript ending while discussing communications.

As the court is tasked with determining whether a genuine issue of material fact exists, full deposition transcripts are crucial to such review (*see Mintz & Fraade, P.C. v Docuport, Inc*., 2012 NY Slip Op 30974 [U], *12 [Sup Ct, NY County 2012] ["plaintiff has failed to supply this court with the transcript of . . . alleged testimony, and merely cites to select excerpts of what was allegedly testified to; this is insufficient on a motion for summary judgment, where movant clearly has the burden of proof" and a "deposition transcript has not been supplied, the court is unable to review such alleged contradictions"]. Therefore, the court cannot determine from the exhibits submitted by defendants whether a reasonable accommodation was provided and whether a cooperative dialogue took place.

It is also unclear from the record how much time was spent on the process of finding accommodations for plaintiffs and if there was a good faith interactive process. For example, the provided excerpt of Cohen's transcript states that "a lot of people spent a lot of time trying to find them alternate positions." (NYSCEF DOC. NO. 108). As an exhibit, defendants include a letter dated Thursday, February 25, 2021, regarding Shaw from the Islamic Cultural Center of New York asking that he be allowed to retain his beard due to religious reasons. Shaw testified that he was

156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL
Motion No. 003

Page 20 of 23

offered two positions from Brown on the day following his support for a religious accommodation, Friday, February 26, 2021. The first position was scheduled in the evening, a time which he informed them that he could not work. Shaw was told of a second job, and was notified of such position at 3:00 p.m. and told that he had until 4:00 p.m. to provide an answer or they were accepting it as his resignation (NYSCEF DOC. NO. 98, at 46). Following the weekend, on Monday March 1, 2021, Mount Sinai considered Shaw to have resigned from the position.

Therefore, viewing the record in the light most favorable to the plaintiffs, factual questions exist as to whether this time period of presenting proof for an accommodation on a Thursday and termination on Monday after declining a job at an alternative time schedule was a reasonable period to accommodate Shaw and constituted the rigorous process as discussed in *Hosking v Memorial Sloan-Kettering Cancer Ctr.; see also Friedman v Bloomberg, L.P.,* 230 AD3d 1060, 1061 [1st Dept 2024] ["viewing the record in the light most favorable to plaintiff, there are issues of fact regarding the extent to which defendant actually considered accommodating plaintiff"]).

Furthermore, based upon the parts of the testimony provided, factual questions also exist as to whether an accommodation was going to be provided to plaintiffs. Shaw testified that two managers, his assistant director as well as another manager, told him that accommodations were not going to be offered pursuant to statements by Girdusky (NYSCEF DOC. NO. 127, 58-60). Girdusky testified that he "had no personal knowledge as to what was actually offered and what steps were made to find positions" for those seeking accommodations (NYSCEF DOC. NO. 102, at 151). Shaw also testified that Cohen "said he is not giving any religious accommodations." (NYSCEF DOC. NO. 127, at 60).

With regards to Moye, Moye testified that he was offered a position, but the submitted testimony from defendants skips from page 39 to page 45 and then to page 47 making it difficult

for the court to follow the questions and answers regarding the position he was offered. In the submitted testimony in plaintiff's opposition, Moye testified that he did not have any understanding as to why his employment was being terminated which further raises a question as to whether a cooperative dialogue was taking place and whether a written final determination was provided to him pursuant to the statute (NYSCEF DOC. NO. 126, at 52).

As questions of fact exist as to whether a reasonable accommodation was provided to Moye and Shaw and whether a cooperative dialogue took place, the part of defendants' motion seeking to dismiss such claims as against these plaintiffs must be denied. Furthermore, the part of plaintiffs' cross motion seeking summary judgment as to these two causes of action must also be denied.

With regards to Jones, the testimony demonstrates that following his submission of an accommodation request for the fit test, he was offered and accepted an employment position in food services at Mount Sinai. Jones testified that he was later terminated from that position due to job abandonment after failing to show up for work on August 16, 2021 and not reporting his absence to his supervisor. Jones testified that no one made comments to him about his religion. (NYSCEF DOC. NO. 100, at 63, 73). Based upon his testimony and acceptance of employment in another position, Jones fails to demonstrate that he was not provided a reasonable accommodation, nor denied a cooperative dialogue, as he accepted a new position when offered. Therefore, the part of defendants' motion seeking summary judgment as to Jones based upon a claim of failure to accommodate must be granted.

## **CONCLUSION and ORDER**

Accordingly, it is

**156584/2021   MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL                    Page 22 of 23**
   **Motion No.  003**

ORDERED that defendants The Mount Sinai Hospital, Mount Sinai Health System, Inc., Jeffrey Cohen, and David Girdusky's motion for summary judgment is granted in part, specifically the parts of the amended complaint alleging that the mask fit test violated the New York State Human Rights Law and the New York City Human Rights Law, the fourth cause of action for disparate impact, and the causes of action as to plaintiff Brian Jones are dismissed; and it is further

ORDERED that plaintiffs' Ronald Moye, Christopher Shaw, and Brian Jones' cross motion for summary judgment is denied; and it is further

ORDERED that the remainder of the action continues.

| __4/29/2025__ | | | | |
|---|---|---|---|---|
| **DATE** | | | **RICHARD G. LATIN, J.S.C.** | |

| CHECK ONE: | | CASE DISPOSED | **X** | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | DENIED | **X** | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

**156584/2021  MOYE, RONALD ET AL vs. THE MOUNT SINAI HOSPITAL ET AL**
**Motion No.  003**

**Page 23 of 23**

23 of 23